143 N.J. Super. 541 (1976)
363 A.2d 944
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF,
v.
CHARLES INVESTMENT CORPORATION, A CORPORATION OF NEW JERSEY; STATE OF NEW JERSEY; SAVE-WAY STATIONS, INC.; HACKENSACK WATER COMPANY, A CORPORATION OF NEW JERSEY; TOWN OF SECAUCUS, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided August 5, 1976.
*542 Mr. Philip F. Mattia, Deputy Attorney General, for plaintiff (Mr. William F. Hyland, Attorney General of New Jersey, attorney).
Mr. Harold A. Kuskin for defendant Charles Investment Corporation (Messrs. Wilentz, Goldman & Spitzer, attorneys).
BILDER, J.S.C.
This is a motion in a condemnation case to strike as much of the landowner's claim as seeks compensation for a loss of access right.[1]
*543 Plaintiff is the owner of land located on the northerly side of Route 3, a principal state highway running in an east-west direction from the Lincoln Tunnel to a point in Passaic County where it joins with State Route 46, another principal state highway. The land contains a Save-Way gasoline station.
On June 5, 1963, in connection with an improvement of Route 3, the State took a ten-foot-wide strip of land along the property's entire 300-foot highway frontage.
Prior to the acquisition the landowner enjoyed a 300-foot frontage directly on the westbound lanes of Route 3 to which access was gained through three driveways.
As a result of the reconstruction of Route 3 (the cause of the taking in this case), it became a controlled access highway. Both the eastbound and westbound roadways were widened to three lanes and in the vicinity of the subject property a service road was constructed. A barrier was constructed between the westbound lanes of the newly widened highway and the service road in order to control access to and from Route 3. As a result of the creation of this controlled access highway, the subject property, which before the reconstruction had fronted directly on the westbound lanes, abutted on the service road. Apart from the fact that a ten-foot-strip was taken along the entire frontage of the premises in question so as to move the owner's southerly boundary line ten feet northward, the subject property now enjoys the same access to the service road which it previously had to Route 3. Its actual frontage and driveway openings have been unaffected by the acquisition (apart from the aforenoted ten-foot shift northward).
The closest access to the service road from westbound Route 3 is via an exit located approximately 1500 feet east of the subject property. The closest access to Route 3 from the service road is obtained by an entrance opening located approximately 200 feet west of the subject property.
In addition to westbound Route 3 traffic specifically seeking the service road, all traffic exiting from the New Jersey *544 Turnpike and seeking to travel westbound on Route 3 must travel the service road and pass the subject property before gaining access to Route 3 proper. Similarly, all traffic exiting Paterson Plank Road seeking access to westbound Route 3 must pass the subject property on the service road.
The question presented is whether the owner of land upon which a gasoline station is located is entitled to be compensated for the loss of direct access to a state highway which resulted when the highway became a limited access road and the gasoline station's access, though substantially unchanged physically, was on the service road. Although the particular question is unique and heretofore undecided, the principles are well established.
Access to a public highway is a property right and its deprivation requires just compensation. Mueller v. N.J. Highway Auth., 59 N.J. Super. 583 (App. Div. 1960). On the other hand, "the property owner is not entitled to access to his land at every point between it and the highway but only to `free and convenient access to his property and the improvements on it.'" Id. at 595. Where, by virtue of state action, access is limited but remains reasonable, there is no such denial of access as entitles the landowner to compensation. State Highway Comm'r v. Kendall, 107 N.J. Super. 248 (App. Div. 1969) (limitation of access to designated openings resulting from the installation of curbing and railing along highway); State v. Stulman, 136 N.J. Super. 148 (App. Div. 1975) (substitution of more circuitous access roads).
Nor is a landowner entitled to compensation by virtue of inconvenience caused by the need to follow a more circuitous route. State v. Monmouth Hills, Inc., 110 N.J. Super. 449 (App. Div. 1970) (loss of left turn access resulting from installation of center barriers); State v. Stulman, supra (substitution of more circuitous access road); see State v. Interpace Corp., 130 N.J. Super. 322 (App. Div. 1974) (access made more difficult by the need to cross a newly constructed feeder lane to Interstate Route 80).
*545 Finally, it is also well established that a landowner has no property right in either the pattern or the flow of traffic.
* * * any change in the highway system or traffic patterns or in the ease of traveling to or from any place in or on the highway system  to or from any place in or on the highway system to or from the Stulman property after the taking, as may be shown by these exhibits and testimony, and which has from time to time been referred to as circuity of access, circuity of travel, reachability and words of similar character, may not be considered by you as an element of damage which the property owner may have sustained from the taking of a portion of the property, and you may not make any award of damages on the basis of these elements.
An abutting land owner has no vested right or interest in traffic patterns or the flow of traffic past his premises, and any damages that may have been sustained because of a possible diversion of traffic or change in traffic patterns does not constitute an element of damage to the land remaining after the taking and is not compensable and you may not make any award in this case on that basis. [State v. Stulman, supra, 136 N.J. Super. at 155-156; trial court's charge approved as having "accorded with settled law."]
The principles found in New Jersey law with respect to compensability of injury to a landowner's access appear to be in accord with the law in other jurisdictions, absent a specific statutory provision. Annotation, "Abutting Owner's Right To Damages For Limitation of Access Caused By Conversion Of Conventional Road Into Limited-Access Highway," 42 A.L.R.3d 13 (1972).
In the instant case the owner's access to the road immediately in front of his property is unchanged and unaffected. Except for the fact that the southerly property line has been moved ten feet to the north,[2] the access driveways are the same in number, size and configuration. There is no deprivation of access such as would entitle the owner to compensation. While it is true that the nature of the abutting *546 road has changed, this does not create a right to compensation, for, as previously noted, the landowner has no property right in the flow of traffic.
Further, if one were to assume arguendo that the relevant access was to the main road rather than the access road, the owner's land would still not have received any compensable injury. Access from Route 3 to the service road is provided 1500 feet to the east and access from the service road to Route 3 is provided 200 feet to the west. As a matter of law, this is reasonable access. See Tubular Service Corp. v. Comm'r State Highway Dept., 77 N.J. Super. 556 (App. 1963), and State v. Interpace Corp., supra.
The real gist of the landowner's complaint in this case is not with access but rather with an economic harm which the owner feels he has suffered by virtue of the fact that he is now on a service road, whereas before he was on a main highway. His real complaint is that traffic, which is, after all, the source of the revenue to the gas station, has been diverted away from the station.
As is the case with most other governmental action, changes in highways and their alignment result in incidental detriment or confer incidental benefit to nearby properties. The building of a freeway may so change the nature of a former main trunk highway as to substantially depress the business value of the abutting properties. A road formerly jammed with traffic can become literally deserted. Whole towns whose economies are tied to interstate traffic passing through on a principal highway may find themselves totally bypassed by the interstate freeways. These economic losses must be treated as noncompensable. See, e.g., Bopp v. State, 19 N.Y.2d 368, 280 N.Y.S.2d 135, 227 N.E.2d 37 (Ct. App. 1967). To do otherwise would create an unacceptable burden on highway improvement.
Turning again more specifically to the service road in the instant case, fairness dictates noncompensability. Fairness with respect to this particular case because the owner is not charged for the benefits, if any, resulting from the fact *547 the abutting road is now a feeder from the New Jersey Turnpike any more than the State is charged for the detriment, if any, which may result from the fact the abutting road is now a service road. Fairness in a broader sense that calls for a rule affording equal treatment to all those who are similarly situated. Here, if this landowner were to be entitled to recover for the economic detriment, if any, resulting from the change in traffic patterns, so by the same token should everyone else located on the service road.[3]
The motion to strike is granted.
NOTES
[1] This motion was heard at the pretrial conference on stipulated facts.
[2] There is no dispute as to the landowner's right to compensation for the ten-foot taking and, indeed, the parties have stipulated as to the fair compensation therefor.
[3] Although a few cases suggest that there could be a distinction, for purposes of compensability, between those owners who have had property taken and are seeking to recover for damage to the remainder and those owners from whom no property is taken (see Annotation, 42 A.L.R.3d, supra at 81), such would seem to raise a serious question under the Equal Protection Clause of the Constitution. Indeed, the perimeters of the problem are endless, for the same argument could be made with respect to property owners whose land does not abut the reconstructed highway but are just as significantly affected  e.g., the landowners in the bypassed town.