575 A.2d 1360

HIGH HORIZONS DEVELOPMENT COMPANY, RESPONDENT,
v. STATE OF NEW JERSEY, DEPARTMENT OF
TRANSPORTATION, APPELLANT.

Argued March 27, 1990—Decided July 2, 1990.

*Susan R. Roop,* Deputy Attorney General, argued the cause for appellant (*Robert J. Del Tufo,* Attorney General of New Jersey, attorney, *Michael R. Clancy,* Assistant Attorney General, of counsel; *Susan R. Roop* and *Jeffrey W. Gerber,* Deputy Attorney General, on the brief).

*John W. Wopat, III,* argued the cause for respondent (*Falvo and Wopat,* attorneys).

The opinion of the Court was delivered by

O'HERN, J.

The central issue in this appeal is a property owner's claim of right to a trial-type hearing on the property owner's application for a state-highway-access permit. Under prior law the Department of Transportation's (DOT's) enabling legislation, *N.J.S.A.* Title 27, spelled out no procedure for processing an access permit, and the regulations enacted under its authority gave but a sparse outline. *N.J.A.C.* 16:41-2. That regulation prescribes the form of application and the documentation to be submitted, depending on the nature of the application, *i.e.,* is it a large project, small project, major highway, etc.? Neither statute nor regulation states that an applicant is entitled to a hearing, much less a trial-type hearing, on an application.

Absent such a provision in DOT's enabling act, High Horizons Development Company (High Horizons) claims entitlement to a trial-type hearing under the provisions of the Administra-

tive Procedure Act (APA), *N.J.S.A.* 52:14B–1 to –15, or other principles of administrative law.

The case arises from High Horizons' development of a condominium project abutting State Highway 36 in Long Branch, Monmouth County, New Jersey. The project consists of fifty-eight units and has frontage on another access street, Clifton Avenue, which leads to Route 36. Route 36, also called Ocean Boulevard, is a divided, four-lane highway that parallels the shore line in this coastal community.

High Horizons applied to DOT in April 1987 for access to Route 36 by way of a circular drive suited to delivery vehicles and other occasional traffic. It proposed principal access for residents' vehicles from Clifton Avenue, but wanted dual access in part to alleviate the traffic burden on the local street. A planned security gate activated by magnetic card would limit the Clifton Avenue entrance to residents. DOT denied the application in a June 19, 1987, letter, explaining:

> The site for the proposed residential development is located several hundred feet north of Joline Avenue which is a signalized intersection with exclusive left turn lanes provided on Route 36. It is recommended that direct access to the site from Route 36 be denied due to the alternate access which is available on Clifton Avenue. This would allow all required traffic movements to be accomplished at the signalized intersection.

High Horizons appealed. In response to concerns of the applicant and local fire authorities about emergency access, in January 1988 DOT proposed limited access by means of a mountable curb. The property owner rejected that solution and renewed the appeal. After further review, including a February 26 hearing before the Region III Engineer, DOT maintained its denial of full access, offering the following reasons:

> There is access to your site from Clifton Avenue. This should handle the traffic generated by your development.
>
> Your traffic report indicates a minimal amount of traffic would have used the Ocean Boulevard access. This being the case, Clifton Avenue will be sufficient to handle the site traffic.
>
> The additional access to Ocean Boulevard could adversely affect the existing traffic patterns on Ocean Boulevard.

Providing access to the project from Ocean Boulevard is unnecessary given the proximity of a regulated crossing at Joline Avenue.

High Horizons carried its appeal to the Acting Deputy State Highway Engineer, who presided at an informal hearing at DOT's Trenton Office on April 25, 1988. Although witnesses were not sworn, High Horizons presented testimony by one of its principals and by a traffic-safety consultant. Both emphasized the careful design for traffic management, which had local approval. DOT produced no testimony and did not cross-examine witnesses. The complex as planned also had a conditional CAFRA permit (Coastal Area Facility Review Act, *N.J. S.A.* 13:19-1 to -21). The applicant claimed that the CAFRA permit was premised on direct access to Route 36.

DOT issued its final decision on June 30, 1988. In denying the application, DOT explained that any need for emergency access from Route 36 would be met by the mountable curb, and that the Clifton Avenue access was, in its judgment, adequate for all other purposes. DOT disputed High Horizons' contention that its CAFRA permit required direct Route 36 access, and declined to base its decision on the need created only by applicant's plan, in the face of its own judgment that direct access "would negatively affect existing traffic patterns." High Horizons appealed to the Appellate Division.

When DOT filed its statement of items comprising the record, pursuant to *Rule* 2:5-4(b), High Horizons responded by moving before DOT, pursuant to *Rule* 2:5-5(a), to settle the record, asserting that six of the fifteen listed documents had never been furnished during the appeal process. DOT denied the motion, responding that the omitted documents contained no relevant, undisclosed information, and High Horizons did not move before the Appellate Division to review that denial. Among the documents not made available to the applicant were several internal memoranda and a copy of a letter from the Monmouth County Planning Board to the Division of Coastal Resources in the Department of Environmental Protection, recommending against direct Route 36 access for another,

nearby condominium development. High Horizons' major concern was that although an internal memorandum referred to the Planning Board letter, High Horizons had had no opportunity to attempt rebuttal.

The Appellate Division agreed with the property owner that an evidentiary hearing was required, reasoning that entitlement to such a hearing turned on whether the application for an access permit was a "contested case" as defined by *N.J.S.A.* 52:14B-2(b). 231 *N.J.Super.* 399, 555 *A.*2d 740 (1989). Relying on *Cunningham v. Department of Civil Service,* 69 *N.J.* 13, 350 *A.*2d 58 (1975), the court found both prerequisites to an evidentiary hearing: (1) the presence of contested factual issues, and (2) dispute over particularized property rights. 231 *N.J.Super.* at 405–07, 555 *A.*2d 740. In addition, the court ruled that DOT had "violated the requirements of administrative due process by failing to disclose all of the documents upon which it relied." *Id.* at 407, 555 *A.*2d 740. The court reversed DOT's final decision and remanded for referral of the matter to the Office of Administrative Law (OAL) as a contested case. We granted certification. 117 *N.J.* 139, 564 *A.*2d 862 (1989).

Since the date of the agency's action, the Legislature has completely overhauled the procedure for handling highway-access permits. State Highway Access Management Act, *L.* 1989, *c.* 32 (Approved February 23, 1989). The new Act directs the agency to adopt implementing regulations. Those regulations were promulgated but have not yet been adopted. State Highway Access Management Code, 22 *N.J.R.* 1061 (1990) (proposed *N.J.A.C.* 16:47).

It would, of course, be premature and unwise to pass on the validity of the new administrative program in an unlitigated setting. Hence, the only remaining issue is whether in the circumstances of this case, not likely to reoccur, the Appellate Division was correct in requiring a trial-type hearing before an Administrative Law Judge (ALJ).

# I

Few subjects have generated more inconclusive principles of law than attend the question of when a trial-type hearing is required as a condition of administrative action. *See generally* 2 K. Davis, *Administrative Law Treatise* § 10.1 (2d ed. 1979) (summarizing evolution of law of protected interests); Rabin, "Some Thoughts on the Relationship Between Fundamental Values and Procedural Safeguards in Constitutional Right to Hearing Cases," 16 *San Diego L.Rev.* 301 (1979) (discussing extent of safeguards needed to protect basic due-process values). Of course it would all be a lot simpler for everyone if plain legislative language were to resolve the problem, but the APA, which is the touchstone for decision in formulating fair administrative procedures, falls short of such clarity.

To place this issue in perspective, it is useful to recall the stages of growth of administrative law. *See* L. Jaffe, *Judicial Control of Administrative Action* 3–10 (1965). At first courts struggled with the contours of substantive policy-making that could be delegated to agencies. *See Schechter Poultry Corp. v. United States*, 295 *U.S.* 495, 55 *S.Ct.* 837, 79 *L.Ed.* 1570 (1935). Once courts recognized that the choice of policy was for the agency, the next distinctive trend in the development of administrative law was to require procedural fairness before an agency could act as a lawmaker by formulating interstitial mandates that affected public conduct or by adjudicating private rights. Hence, the 1946 enactment of the federal Administrative Procedure Act, 5 *U.S.C.* §§ 551 to 559. New Jersey enacted its APA in 1968. *L.* 1968, *c.* 410. A 1978 amendment directed that the OAL would provide impartial hearing examiners in "contested cases." *L.* 1978, *c.* 67 § 8 (codified at *N.J.S.A.* 52:14B–10(c)). The language of the New Jersey APA is similar to the federal Administrative Procedure Act and to the Uniform Law rendition adopted by many states.

Rather than itself specifying when a trial-type hearing is required, the APA piggybacks on other sources for the determi-

nation of this fundamental issue. Its thesis is that when an administrative hearing is required, that hearing shall be conducted in accordance with the APA. Hence, the APA provides that "[a]ll hearings of a State agency required to be conducted as a contested case under this act or any other law shall be conducted by an administrative law judge assigned by the Director of the Office of Administrative Law [with certain exceptions]." *N.J.S.A.* 52:14B–10(c).

Regrettably, however, the APA's definition of "contested case" says no more than that a "contested case" is

a proceeding, including any licensing proceeding, in which the legal rights, duties, obligations, privileges, benefits or other legal relations of specific parties are required by

[a.] *constitutional right,* or

by

[b.] *statute,*

to be determined by an agency * * * after opportunity for an agency hearing * * *.

[*N.J.S.A.* 52:14B–2(b) (emphasis added and format clarified).]

It is apparent from the foregoing [language] that the guarantee of a full adversary trial is reserved for those cases in which the legal rights and duties of "specific parties" are at issue and required to be determined by a decision disposing of their interests because of "constitutional right" or "statute."

[*Public Interest Research Group v. State,* 152 *N.J.Super.* 191, 205, 377 *A.*2d 915, *certif. denied,* 75 *N.J.* 538, 384 *A.*2d 517 (1977).]

We have already explained that the DOT "statute" does not by its terms require a hearing for an access permit. The issue then is almost identical in form to one that has arisen under wetlands permit provisions of the Army Corps of Engineers. Property owners claimed entitlement to a trial-type hearing by virtue of the provisions of the federal APA. Federal courts explained that the comparable provision, 5 *U.S.C.* § 554, "does not affect all adjudications, but rather this section comes into play only in cases of adjudication which are *required by statute to be determined on the record after an opportunity for an agency hearing.*" *Taylor v. Dist. Eng'r, U.S. Army Corps of Eng'rs,* 567 *F.*2d 1332, 1336 (5th Cir.1978). In contrast, see *In re Orange Savings Bank,* 172 *N.J.Super.* 275, 411 *A.*2d 1150

(App.Div.) (New Jersey's banking act required a hearing for branch-bank applications, thus the case was a "contested case" under the APA definition), *appeal dismissed,* 84 *N.J.* 433, 420 *A.*2d 339 (1980). *See also* 2 K. Davis, *supra,* § 10:7, at 333 ("[W]hen a *statute requires* a hearing with a determination on the record, § 556 [of the APA, controlled by § 554] applies, and § 556 clearly requires *trial* procedure.") (emphasis added).

Because here no "statute" requires the hearing, we must consider whether "constitutional right" requires a trial-type hearing.

## II

### A.

Before considering the question of "what kind of hearing" is required, we may note that the property owner does not have either an absolute or constitutional right to a particular form of access to a public highway. It seems to be agreed in New Jersey, as elsewhere, that in the absence or denial of all highway access, "[t]he general rule is that the property owner is not entitled to access to his land at every point between it and the highway but only to 'free and convenient access to his property and the improvements on it.' " *Mueller v. New Jersey Highway Auth.,* 59 *N.J.Super.* 583, 595, 158 *A.*2d 343 (App.Div. 1960). Reasonable highway regulations will not give rise to a claim for compensable taking. This doctrine has been summarized: "[A]n owner of land abutting a highway may not be shut off from all access thereto, but his right of access must be consonant with traffic conditions and reasonable and uniform police requirements." *State Highway Comm'r v. Kendall,* 107 *N.J.Super.* 248, 252, 258 *A.*2d 33 (App.Div.1969). "[L]imitation of access, so long as reasonable access to the highway system remains, is not a taking by eminent domain, but is accomplished under the police power, and is not compensable." *Commonwealth, Dep't of Highways v. Denny,* 385 *S.W.*2d 776, 777 (Ky.1964).

The new Highway Access Management Act confirms those principles.

e. Every owner of property which abuts a public road has a right of reasonable access to the general system of streets and highways in the State, but not to a particular means of access. The right of access is subject to regulation for the purpose of protecting the public health, safety and welfare.

f. Governmental entities through regulation may not eliminate all access to the general system of streets and highways without providing just compensation.

g. The access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway.

[State Highway Access Management Act, *L.* 1989, *c.* 32, § 2e-g.]

### B.

Although a property owner is not entitled to any particular highway access, the owner is certainly entitled to procedural fairness in pursuing discretionary access. "[W]hen an important determination of individual rights is being made by the government, a citizen in a democratic society has a critical interest in having his status taken seriously." Rabin, *supra,* at 303. Courts have used varied procedural rubrics for determining when a trial-type hearing may be required. We need not resolve whether an abutting property owner has a particularized property interest in a specific form of highway access. In any case that alone does not determine the hearing requirements. "The right to a full trial-type hearing in administrative proceedings is generally limited to the situation where adjudicatory facts—that is, facts pertaining to a particular party—are in issue." Friedman, "Judicial Review Under the Superfund Amendments," 14 *Colum.J.Envtl.L.* 187, 201 (1989) (quoting Project, "Federal Administrative Law Developments–1971," 1972 *Duke L.J.* 115, 171 n. 24).

Thus, the question of whether an adjudicatory hearing is required in any particular administrative context will often hinge on whether courts consider the facts in question to be adjudicatory in nature. Adjudicative facts have been defined by Professor Davis as "facts pertaining to the parties and their businesses and activities. Adjudicative facts usually answer the questions of who did what, where, when, how, why, with what motive or intent; adjudicative

facts are roughly the kind of facts that go to a jury in a jury case." In contrast, legislative facts, the determination of which will not normally require a trial-type hearing, "do not usually concern the immediate parties, but are the general facts which help the tribunal decide questions of law and policy and discretion. As Professor Davis has explained,

> [a]n agency should engage in formal factfinding when, regardless of the role it is playing, the need for factual accuracy outweighs other considerations and trial-type procedures will effectively decrease uncertainty.

[*Id.* at 201 (quoting 2 K. Davis, *supra,* § 12:3 at 413, and McGarity, "Substantive and Procedural Discretion in Administrative Resolution of Science Policy Questions," 67 *Geo.L.J.* 729, 775 (1979)).]

In New Jersey, we have tended to ask whether the agency is acting in a judicial or quasi-judicial capacity or in a legislative capacity. *See State Board of Milk Control v. Newark Milk Co.,* 118 *N.J.Eq.* 504, 179 *A.* 116 (E. & A.1935). "Need for a hearing [is] to be ascertained by determining whether the administrative agency was acting in a legislative or a quasi-judicial capacity." *Cunningham v. Department of Civil Serv., supra,* 69 *N.J.* at 20, 350 *A.*2d 58. We have also said that the problem may be approached "by asking whether the agency is obligated to consider the evidence and apply the law to the facts as found." *Id.* at 21, 350 *A.*2d 58.

It will be seen at once that these guidelines do not provide an unerring solution to the question of when a hearing is required, *see Bally Mfg. Corp. v. New Jersey Casino Control Comm'n,* 85 *N.J.* 325, 334, 426 *A.*2d 1000, *appeal dismissed,* 454 *U.S.* 804, 102 *S.Ct.* 77, 70 *L.Ed.*2d 74 (1981), or what type of hearing is required. In *Cunningham v. Department of Civil Service, supra,* 69 *N.J.* 13, 350 *A.*2d 58, the Court split five to two.

> [A] good deal of law that bears on the proposition [when a trial-type hearing is required] is confused. Some courts tend to assume that one who has vital interests at stake in a controversy is for that reason entitled to the protection of trial procedure, whether or not the facts are in dispute.
>
> The law clearly is, at a most elementary level, that because a trial is a process for taking evidence, subject to cross-examination, and because taking evidence is not appropriate except on disputed facts, trial procedure is not required on issues of law, policy or discretion.
>
> [2 K. Davis, *supra,* § 12:2, at 409–10].

If, as Davis says, "a trial is a process for taking evidence subject to cross-examination," and the only evidence bearing on

a permit consists of the various diagrams and plans submitted by property owners, the question is: "What does one cross-examine?" As noted, at the April 25, 1988, hearing, DOT offered no testimonial evidence. If the DOT is exercising "policy or discretion" with respect to access, a clear requirement for a trial-type hearing is not present. On the other hand, if the question turns on expert opinion relied on by the agency, one must be able in some way to contest the bases of the opinion. Professor Davis, discussing the requirements for a evidentiary hearing, states: "Due process never requires a trial on non-factual issues. What is needed on such issues is argument, written or oral, not evidence and not trial procedure * * *." 2 K. Davis, *supra*, § 12:1, at 406.

## C.

Because the rules for decision are not self-explaining, it is perhaps wise to adhere to the fundamental analysis that we have applied for determining what process is due in a given situation. The high tide of administrative due process was undoubtedly *Goldberg v. Kelly*, 397 *U.S.* 254, 90 *S.Ct.* 1011, 25 *L.Ed.*2d 287 (1970), in which the United States Supreme Court relied on a judicial trial model when identifying procedural safeguards for a welfare recipient threatened with loss of benefits. "Soon, however, the Court began a gradual process of isolating *Goldberg* and treating a trial-type proceeding as an extraordinary requirement." Rabin, *supra*, at 306. It seemed to take a harder look at whether the goals of procedural due process might be implemented in other, less formal ways. Thus in *Mathews v. Eldridge*, 424 *U.S.* 319, 96 *S.Ct.* 893, 47 *L.Ed.*2d 18 (1976), the Court departed from the trial-type requirements of *Goldberg*. We have repeatedly employed the three-prong test set out in *Mathews v. Eldridge* for determining whether administrative procedures afford due process to affected parties. The three factors taken into account are: (1) the private interest at stake; (2) the risk of erroneous deprivation of that interest through the use of agency procedures and

the probable value of additional or substitute safeguards; and (3) the state interest, including the burdens entailed by additional procedural requirements. *Id.* at 335, 96 *S.Ct.* at 903, 47 *L.Ed.*2d at 33; *see In re Daniels,* 118 *N.J.* 51, 64, 570 *A.*2d 416 (1990).

The question one must ask is whether the contested issues here are ones that ordinarily should be determined without providing the parties an opportunity for a trial. In *Shoreline Associates v. Marsh,* 555 *F.Supp.* 169 (D.Md.1983), the court analyzed the principles of procedural due process in the context of a wetlands permit. It noted that due process does not always require the opportunity to cross-examine expert witnesses, so long as the opportunity to meet and rebut the expert analysis is afforded, because "the credibility and veracity of the witnesses [is] not usually at issue." *Id.* at 175 (citing *Mathews v. Eldridge, supra,* 424 *U.S.* at 343–45, 96 *S.Ct.* at 906–08, 47 *L.Ed.*2d at 38–39).

■ There is no question that the property owner should have full opportunity to be heard by the agency, that is, to submit comment with respect to the agency's decision, and to meet any conclusions that may be unfavorable to the property owner. Ordinarily, in a permitting process (as for example, under CAFRA, *N.J.S.A.* 13:19–9a) "the hearing is not adjudicatory and is not required to be conducted as a 'contested hearing' under the Administrative Procedure Act." *Public Interest Research Group v. State, supra,* 152 *N.J.Super.* at 207–08, 377 *A.*2d 915 (quoting *In re Environmental Protection Dep't,* 139 *N.J.Super.* 514, 516, 354 *A.*2d 652 (App.Div.1976)) (although a footnote reserves the question whether the property owner would be entitled to a trial-type hearing).

■ We evaluated such concerns for administrative due process in connection with educational issues in *Board of Education v. Cooperman,* 105 *N.J.* 587, 523 *A.*2d 655 (1987). There we reviewed an agency's ability to provide informal or flexible procedures for determining certain issues and were satisfied

that so long as the parties had adequate notice, a chance to know opposing evidence, and to present evidence and argument in response, due process would be fundamentally satisfied. The additional requirements of procedural due process may then necessarily vary from case to case. *Id.* at 600–01, 523 *A.*2d 655; *see, e.g., In re Solid Waste Util. Customer Lists,* 106 *N.J.* 508, 517, 524 *A.*2d 386 (1987) (no adjudicatory hearing where contest did not center on disputed facts). In sum, it is the presence of disputed adjudicative facts, not the vital interests at stake, that requires the protection of formal trial procedure. 2 K. Davis, *supra,* § 12:2, at 409; *see* Davis, "The *Goss* Principle," 16 *San Diego L. Rev.* 289 (1979) (commenting on informal procedures of *Goss v. Lopez,* 419 *U.S.* 565, 95 *S.Ct.* 729, 42 *L.Ed.*2d 725 (1975), allowing notice, reasons, and opportunity to be heard prior to school suspension, rather than trial-type hearing).

### D.

Because the procedural requirements of due process necessarily vary from case to case, *Lopez v. New Jersey Bell Tel. Co.,* 51 *N.J.* 362, 373, 240 *A.*2d 670 (1968), the question arises whether in this case the requirements of due process mandate further, more formal agency action. On that score, there is one aspect of this case that is extremely troubling, namely, the agency's reliance on undisclosed evidence, which could not be contested by the property owner. Certainly, included among the elements of procedural fairness is a chance to know the opposing evidence and argument and to present evidence and argument in response. 2 K. Davis, *supra,* § 10:6, at 327, *cited in Board of Educ. v. Cooperman, supra,* 105 *N.J.* at 600, 523 *A.*2d 655.

One of the core values of judicial review of administrative action is the furtherance of accountability. Thus, an agency is never free to act on undisclosed evidence that parties have had no opportunity to rebut. *Brotherhood of R.R. Train-*

*men v. Palmer,* 47 *N.J.* 482, 487, 221 *A.*2d 721 (1966). In this case, it appears that the agency did consider recommendations that were not disclosed to the property owner, and the property owner was not entitled to comment thereon. We agree with the Appellate Division that here "DOT violated the requirements of administrative due process by failing to disclose all of the documents upon which it relied in denying appellant's application." 231 *N.J.Super.* at 407, 555 *A.*2d 740. Hence, in the circumstances of this case, we agree with the Appellate Division that a remand is required to accord administrative due process. The case, however, does not meet the definition of a "contested case" under the APA and need not, although it may, be referred by the agency to the OAL. At a minimum DOT must accord the property owner a new hearing at which it may meet and contest all evidence relied on by the agency. The agency must tailor the procedure to ensure due process and may allow cross-examination of its experts to satisfy that requirement. *See Board of Educ. v. Cooperman, supra,* 105 *N.J.* at 601, 523 *A.*2d 655 (agency should exercise power to allow cross-examination in the interests of justice).

As modified, the judgment of the Appellate Division is affirmed.

Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, GARIBALDI, and STEIN join in this opinion.

*For modification and affirmance*—Chief Justice WILENTZ, and Justices CLIFFORD, HANDLER, POLLOCK, O'HERN, GARIBALDI and STEIN—7.

*For reversal*—None.