244 N.J. Super. 219 (1990)
581 A.2d 1353
STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANSPORTATION, PLAINTIFF-APPELLANT,
v.
NATIONAL AMUSEMENTS, INC., A CORPORATION OF MARYLAND, DEFENDANT-RESPONDENT, AND STATE OF NEW JERSEY, CITY OF NEWARK, IN THE COUNTY OF ESSEX, A MUNICIPAL CORPORATION OF NEW JERSEY, DEFENDANTS.
Superior Court of New Jersey, Appellate Division.
Argued October 15, 1990.
Decided November 1, 1990.
*220 Before Judges DREIER, ASHBEY and LANDAU.
Bernard M. Flynn, Deputy Attorney General argued the cause for appellant (Robert J. Del Tufo, Attorney General, attorney; Michael R. Clancy, of counsel; Bernard M. Flynn, Deputy Attorney General, on the brief).
Morris M. Schnitzer argued the cause for respondent (Morris M. Schnitzer, on the brief).
The opinion of the court was delivered by DREIER, J.A.D.
The State of New Jersey, by the Commissioner of Transportation appeals from a Law Division judgment determining that defendant, National Amusements, Inc., is entitled to some compensation for the termination of all direct access between its property and Routes 1 and 9 in Newark. The triangular *221 property has a 980 foot frontage on Routes 1 and 9 Northbound just before the Pulaski Skyway; a second side is contiguous to the New Jersey Turnpike (and thus has no permitted ingress or egress); and the third side borders Foundry Street in Newark. Defendant operated a drive-in movie theatre on the site for 30 years prior to 1986. It is now constructing a 10-screen luxury indoor theatre, after receiving Planning Board approval. The State Department of Transportation, however, has closed off all direct access to and from Routes 1 and 9. This will require all prospective patrons using Routes 1 and 9 Northbound to travel from one and a half to two miles on Newark streets in order to enter the theatre property. The exit from the property to the highway is now only slightly more difficult (and much safer) than before.[1] Defendant contends that it has a right to some direct access to and from the highway, although not at any *222 particular point along its property line. It claims this as a common-law right which, without an exercise of the State's power of eminent domain and the payment of compensation, cannot be terminated by a State regulation or order.
The State's complaint seeking to deny access to Routes 1 and 9 was filed September 1, 1987. An order returnable December 4, 1987 required defendants to show cause why a judgment should not be entered finding, first: that the State had properly exercised its right to deny access; second, that the access right acquired by the State was of only nominal value; and third, that the property was left with reasonable access to the general system of streets and highways, and therefore the partial denial of access was non-compensable. By letter opinion dated November 3, 1988, the trial judge held that National Amusements had a common-law right of direct access to Routes 1 and 9 Northbound, and thus the State's denial thereof was compensable. See N.J.S.A. 20:3-29; State by Comm'r of Transp. v. Orenstein, 124 N.J. Super. 295, 298-299, 306 A.2d 479 (App.Div. 1973). The parties were given a period of time to settle the matter before entry of the order for judgment. On August 8, 1989 the judgment was entered declaring the access to be compensable; finding that the State exercised its power of eminent domain; appointing commissioners to fix compensation; and staying further proceedings until final disposition of the anticipated appeal.
In May 1989, after the filing of the complaint, but before the entry of the judgment, the State Highway Access Management Act, L. 1989, c. 32 (N.J.S.A. 27:7-89 et seq.), became effective. N.J.S.A. 27:7-90e, f., and g. provide:
e. Every owner of property which abuts a public road has a right of reasonable access to the general system of streets and highways in the State, but not to a particular means of access. The right of access is subject to regulation for the purpose of protecting the public health, safety and welfare.
f. Governmental entities through regulation may not eliminate all access to the general system of streets and highways without providing just compensation.

*223 g. The access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway.
In addition, although National Amusements still contends that the prior common law recognized a private compensable access easement to an abutting State highway somewhere along the property's frontage, and cites authority for this proposition,[2] the Supreme Court in High Horizons Dev. Co. v. Dept. of Transp., 120 N.J. 40, 48-49, 575 A.2d 1360 (1990), has in relevant dicta[3] stated that the protected right is not access to the highway itself, but to "reasonable access to the highway system." Id. at 48, 575 A.2d 1360. It further stated that the Highway Access Management Act did not change the law, but confirmed the existing common-law principles. Id. at 49, 575 A.2d 1360. In its explanation, the Court stated:
... It seems to be agreed in New Jersey, as elsewhere, that in the absence or denial of all highway access, `[t]he general rule is that the property owner is not entitled to access to his land at every point between it and the highway but only to "free and convenient access to his property and the improvements on it."' Mueller v. New Jersey Highway Auth., 59 N.J. Super. 583, 595, 158 A.2d 343 (App.Div. 1960). Reasonable highway regulations will not give rise to a claim for compensable taking. This doctrine has been summarized: `[A]n owner of land abutting a highway may not be shut off from all access thereto, but his right of access must be consonant with traffic conditions and reasonable and uniform police requirements.' State Highway Comm'r v. Kendall, 107 N.J. Super. 248, 252, 258 A.2d 33 (App.Div. 1969). `[L]imitation of access, so long as reasonable access to the highway system remains, is not a taking by eminent *224 domain, but is accomplished under the police power, and is not compensable.' Commonwealth, Dep't of Highways v. Denny, 385 S.W.2d 776, 777 (Ky. 1964).
The new Highway Access Management Act confirms those principles. (Quoting N.J.S.A. 27:7-90e. through g.). [120 N.J. at 48-49, 575 A.2d 1360].
The Supreme Court in High Horizons noted the difference between the State's use of its police power and taking by eminent domain. The Court, however, quoted not only from Mueller v. New Jersey Highway Auth., 59 N.J. Super. at 595, 158 A.2d 343, and State Highway Comm'r v. Kendall, 107 N.J. Super. at 252, 258 A.2d 33, but also from Commonwealth, Dep't of Highways v. Denny, 385 S.W.2d 776, 777 (Ky. 1964). In both Mueller and Kendall there was an implicit recognition of the State's right to limit or regulate the access from a State highway to private property, but such regulation was not held to include cutting off the property owner's right to some direct access to the highway itself. In Denny, however, the permissible remaining access was described as "to the highway system." This shift in language, confirmed in the Highway Access Management Act, focuses the inquiry not upon direct access, but rather upon the reasonableness of the alternative access to the general system of highways. As noted infra, the Act also gives standards to determine whether alternative access is reasonable.
Understandably, the trial judge could not have applied the High Horizons analysis, since that opinion was decided nearly two years after his opinion. The new Act, which took effect just prior to his final decision, also could well have been deemed inapplicable to the complaint filed years before. The judge, therefore, might well have assumed under existing law that National Amusements ipso facto was entitled to some compensation for the closing of all direct access to Routes 1 and 9. Even if the alternatives were reasonable, the assessment of the alternatives would merely affect the amount of compensation, not whether the property owner was entitled to compensation at all.
*225 Now, under the High Horizons analysis and the statute which the Court states to be confirmatory of the common-law rights possessed by property owners, the new standards must be applied to determine whether there is a right to compensation. The Act itself supplies some standards. N.J.S.A. 27:7-94c(1) states:
For property zoned or used for commercial purposes, access onto any parallel or perpendicular street, highway, easement, service road or common driveway, which is of sufficient design to support commercial traffic to the business or use, and is so situated that motorists will have a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway. For the purposes of this subsection, `property used for commercial purposes' shall include, but not be limited to, property used for wholesale facilities, retail facilities, service establishments or office or research buildings, and property used for residential purposes consisting of developments in excess of four residential units per acre with a total acreage of 25 or more acres.
And see Assembly Appropriation Committee Statement to S.772, which became L. 1989, c. 32, defining the State's duties on revocation of an access permit:
When an access permit is revoked, the commissioner shall be responsible for providing all necessary assistance to the property owner in establishing the alternative access, including the funding of any such improvements by DOT. The permit cannot be revoked until this alternative access is completed and available for use. With regard to property zoned or used for commercial purposes, there must be access onto any parallel or perpendicular street, highway, easement, service road, or common driveway which is able to support commercial traffic to the business or use, and is so situated that motorists will have a convenient, direct, and well-marked means of both reaching the business or use and returning to the highway.
On remand, the issue before the trial judge will require the analysis of the question of reasonableness of the new access, which in turn is dependent upon the use of the property and the expected traffic flow.[4] The trial judge shall make the threshold determination under High Horizons and the statute whether the State has taken a compensable property interest. See State v. Hess Realty Corp., 226 N.J. Super. 256, 259, 260-261, 543 *226 A.2d 1050 (App.Div. 1988), aff'd o.b. 115 N.J. 229, 557 A.2d 1372 (1989), cert. den. ___ U.S. ___, 110 S.Ct. 406, 107 L.Ed.2d 371 (1989). If so, National Amusements is entitled to have its compensation assessed by condemnation commissioners, a condemnation jury, or a later court; if not, plaintiff is entitled to its requested order.
The judgment of August 8, 1989 is reversed and the matter is remanded to the Law Division for reargument and reconsideration in accordance with this opinion. We do not retain jurisdiction.
*227 
*228 
NOTES
[1] to the closing of access, northbound traffic on Routes 1 and 9 could exit into the theatre site just before the division of the Raymond Boulevard exit and the Pulaski Skyway entrance ramp, and then turn into the northerly portion of the site. Those patrons wishing to exit from the site onto Routes 1 and 9 could exit the site on Foundry Street at the westerly corner of the property where there was an entrance ramp to northbound Routes 1 and 9. See Exhibit 1 attached to this opinion.
After the closure of defendant's direct access, entrance onto Routes 1 and 9 from the site was little changed, except that exiting traffic would have to turn onto Roanoke Avenue for a short distance where a new entrance ramp has been constructed. The distance difference is slight, but the entrance onto Routes 1 and 9 is now set back further from the fork in the highway leading to the Skyway and the Raymond Boulevard exit.
The significant change involves the access to the site from Routes 1 and 9 northbound. See Exhibit 2 attached to this opinion. A driver would have a choice of taking the Delancy Street exit from the highway, turning left on Delancy Street to Stockton Street then proceeding along Rome Street for several blocks, jogging under the highway to the end of Roanoke Avenue and from there to the Foundry Street border of the site. Alternatively, a driver could leave the highway by the Raymond Boulevard exit, take Raymond Boulevard to the cloverleaf of exit 15A of the New Jersey Turnpike, and then proceed along Doremus Avenue to Foundry Street through its various turns back to the site. The total distance has been estimated at between 1.5 and 2 miles. These routes were described by National Amusement's counsel as a "spaghetti series of exchanges."
[2] See State Highway Commissioner v. Kendall, 107 N.J. Super. 248, 252, 258 A.2d 33 (App.Div. 1969); Mueller v. N.J. Highway Auth., 59 N.J. Super. 583, 595, 158 A.2d 343 (App.Div. 1960); but see State v. Charles Investment Corp., 143 N.J. Super. 541, 544, 363 A.2d 944 (Law Div. 1976), aff'd o.b. 151 N.J. Super. 14, 376 A.2d 534 (App.Div. 1977), aff'd o.b. 76 N.J. 86, 385 A.2d 1227 (1978) and cases there cited; (where Judge Bilder held that the property's relegation to frontage on a service road was not compensable); and United States v. Certain Land in the City of Newark, 314 F. Supp. 836 (D.N.J. 1970), aff'd 439 F.2d 670 (3rd Cir.1971).
[3] The Supreme Court acknowledged its analysis as dicta, when it stated:

We need not resolve whether an abutting property owner has a particularized property interest in a specific form of access. [120 N.J. at 49, 575 A.2d 1360].
[4] At oral argument, counsel for National Amusements argued that not only is the access too attenuated, but also that some of the secondary streets are inadequate to handle the traffic flow. He thus claims that there is no longer reasonable access to the site consonant with its use.