725 A.2d 119

STATE OF NEW JERSEY, BY THE COMMISSIONER OF TRANS-
PORTATION, PLAINTIFF–RESPONDENT, v. VAL (VID) DI-
KERT AND SANDRA ANSELMO, DEFENDANTS–APPEL-
LANTS,WAWA INC., A CORPORATION OF NEW JERSEY;
STATE OF NEW JERSEY; CHARLOTTE JOSEPH; JULES JO-
SEPH; SHU LEE INC., A DEFUNCT CORPORATION OF NEW
JERSEY; TOWNSHIP OF MILLSTONE, IN THE COUNTY OF
MONMOUTH, A MUNICIPAL CORPORATION OF NEW JER-
SEY, DEFENDANTS.

Superior Court of New Jersey
Appellate Division

Submitted February 1, 1998—Decided March 12, 1999.

Before Judges PETRELLA, D'ANNUNZIO, and COLLESTER.

*Jeffrey M. Hall*, attorney for appellants.

*Peter Verniero*, Attorney General, attorney for respondent (*Joseph L. Yannotti*, Assistant Attorney General, of counsel, and *Lorinda Lasus*, Deputy Attorney General, on the brief).

The opinion of the Court was delivered by

PETRELLA, P.J.A.D.

Defendants, Val Dikert and Sandra Anselmo, appeal from the Law Division judge's decision ruling that they were not entitled to compensation from the State as a result of its condemnation of the servient tenement, including an easement providing them with access to the highway, because the State provided them with a reasonable alternative means of access to their respective properties. The judge found that where the State provides a reasonable means of alternative access, there is no taking by eminent domain, but rather it is accomplished by the police powers.

Dikert and Anselmo are owners of adjacent properties in the Township of Millstone that have the right to use an easement that runs through property owned by Wawa Inc. The easement was reserved in the deed under which Wawa Inc. acquired the property. From the southerly end, the easement runs perpendicular to Route 537 and then at Anselmo's property line it extends to the west, providing Dikert and Anselmo with ingress and egress to their properties from Route 537.

The State engaged in a highway project around 1995 to improve the interchange between I–195 and Route 537, a major access route to Great Adventure. The project consisted of: adding a lane on Route 195 eastbound to Route 537 southbound; adding a new ramp from Route 195 eastbound to Route 537 northbound; increasing the lanes in both directions on Route 537; adding a jughandle on Route 537 northbound along with a traffic signal at the intersection with Pine Drive; and creating a new service road off of Pine Drive to provide access to Dikert's and Anselmo's properties as well as the rear of the commercial properties along Route 537.

Wawa Inc.'s property fronts Route 537 near the ramp from I-195. Adjacent to the Wawa property is property owned by a McDonald's Restaurant. Next to McDonald's is property owned by Holly Plaza Associates. In March 1997, the State filed its condemnation complaint against property owned by Wawa Inc., and these property owners, including Dikert and Anselmo, under the authority of *N.J.S.A.* 27:7–22, and obtained an order to show cause. Portions of the McDonald's, Wawa, and Holly Plaza properties were condemned to construct the service road that would border the rear of these commercial properties,[1] providing access to the rear of McDonald's and Wawa's buildings, and the front of Dikert's and Anselmo's properties. Before construction of the service road, a buffer of trees existed between Dikert's and Anselmo's properties and McDonald's, Wawa, and Route 537. Construction of the service road resulted in the buffer being removed. However, no portion of Dikert's or Anselmo's properties were acquired in the condemnation proceedings.

The Department of Transportation (DOT) offered Wawa Inc., $230,000 as just compensation for the partial taking, filed a declaration of taking, and deposited that amount with the Superior Court. The March 17, 1997 order to show cause, returnable April 18, directed defendants to show cause why judgment should not be entered appointing commissioners to fix the compensation for the property interests described in the complaint.

In May 1997, Dikert and Anselmo filed answers and counterclaims seeking to compel the DOT to condemn their adjoining property due to a decrease in value of their property resulting from the construction of the service road, and interference with their use of an access easement as a result of the DOT's taking of Wawa's property. Before the adjourned return date, the DOT

---

[1] Access was required via the service road because the entrance to Wawa violated the State Highway Access Management Code, *N.J.A.C.* 16:47–1.1, *et seq.* which precludes access points along acceleration lanes and along interchange ramps for safety reasons. This access point was also part of the existing easement used by Anselmo and Dikert.

and Wawa agreed that the proposed taking should encompass the entire lot. An amended complaint sought to condemn Wawa's entire interest in the property for just compensation of $1,089,165.

Defendants Dikert and Anselmo were permitted to file an amended answer and counterclaim *nunc pro tunc*. Their counterclaim alleged that the condemnation of the Wawa property severed the access easement serving their dominant tenements, obligating the DOT to pay just compensation. They also asserted that the construction of the service road would result in an inverse condemnation of their property by destroying its aesthetic value. In addition, the counterclaim alleged that construction on the service road diverted surface water and directed it onto their properties, creating an actionable nuisance, and that the drainage system was improperly designed.

On January 20, 1998, the judge concluded that Dikert and Anselmo failed to set forth any facts warranting the relief requested. As to the access easement, the judge stated that in taking the easement the DOT had provided the defendants with a reasonable alternative route to access Route 537, relying on *State, by Commissioner of Transportation v. National Amusements*, 244 *N.J.Super.* 219, 581 *A.2d* 1353 (App.Div.1990), *certif. denied*, 127 *N.J.* 327, 604 *A.2d* 601 (1991). He thus ruled that defendants were not entitled to compensation for the condemnation of a portion of the access easement. The judge also ruled that defendants' other claims involved tort actions, not inverse condemnation.

Defendants argue that the judge erred in dismissing their claims. They assert entitlement to just compensation for the condemnation of the servient tenement, which contained the access easement, and for the alleged resulting decrease in the value of their properties flowing from the construction of a service road as the alternative means of access. They also argue that their interests in the easement and their properties are inseparable, entitling them to severance damages.

The State, by the Commissioner of Transportation, argues that defendants are not entitled to just compensation and contends that the State Highway Access Management Act, *N.J.S.A.* 27:7–89 to 7:98, and its implementing regulations, known as the State Highway Access Management Code, *N.J.A.C.* 16:47–1.1 to 16:47–8.4, support the judge's decision. Finally, the State contends that the defendants are not entitled to severance damages because those damages are awarded only to property owners where partial condemnation has occurred, based on the value of the remaining property, not where an easement was condemned.

## I.

Defendants argue that the judge erred in dismissing their request for an order compelling the State to initiate condemnation proceedings for the acquisition of the easement.

■ Our federal and state constitutions provide that when private property is condemned for public use, the government is required to pay the property owner just compensation. *U.S. Const.* amend. V; *N.J. Const.* art. 1, ¶ 20.[2] When the government exercises its powers of eminent domain, the landowner is entitled to the amount of money that would make him whole, *i.e.*, "fair market value" for the property. *Township of West Windsor v. Nierenberg*, 150 *N.J.* 111, 126, 695 *A.*2d 1344 (1997). *See* Eminent Domain Act of 1971, *N.J.S.A.* 20:3–1 to 20:3–50.

■ Dikert and Anselmo claim that the taking of the easement over the Wawa property that had benefitted their property constituted a compensable taking. An easement is a " 'nonpossessory incorporeal interest in another's possessory estate in land, entitling the holder ... to make some use of the other's property.' " *Kline v. Bernardsville Ass'n Inc.*, 267 *N.J.Super.* 473, 478, 631 *A.*2d 1263 (App.Div.1993) (citation omitted). The land burdened

---

[2] Art.1, ¶ 20 of the New Jersey Constitution states: "Private property shall not be taken for public use without just compensation."

by the easement is known as the servient tenement, while land benefitting from the easement is the dominant tenement. *Nichols on Eminent Domain* § 5.07[2][a].

Cases dealing with the impact of eminent domain on easements generally involve situations where: (1) the servient tenement, including an easement, is taken, precluding the dominant tenement on adjacent land from utilizing the easement, *see, e.g., State, by Commissioner of Transportation v. Orenstein,* 124 *N.J.Super.* 295, 302, 306 *A.*2d 479 (App.Div.), *certif. denied,* 63 *N.J.* 588, 311 *A.*2d 10 (1973); *State, by Commissioner of Transportation v. Stulman,* 136 *N.J.Super.* 148, 156–157, 345 *A.*2d 329 (App.Div. 1975); or, (2) those where an access easement, utilized by the owner of property abutting a highway, is taken, *see, e.g., Mueller v. New Jersey Highway Authority,* 59 *N.J.Super.* 583, 158 *A.*2d 343 (App.Div.1960); *Tubular Service Corp. v. Commissioner of the State Highway Department,* 77 *N.J.Super.* 556, 187 *A.*2d 201 (App.Div.), *aff'd,* 40 *N.J.* 331, 191 *A.*2d 745 (1963); *State, by Commissioner of Transportation v. Charles Investment Corporation,* 143 *N.J.Super.* 541, 544, 363 *A.*2d 944 (Law Div.1976), *aff'd,* 151 *N.J.Super.* 14, 376 *A.*2d 534 (App.Div.1977), *aff'd,* 76 *N.J.* 86, 385 *A.*2d 1227 (1978).

The first category of cases is represented by *State, by Commissioner of Transportation v. Orenstein, supra* (124 *N.J.Super.* at 302, 306 *A.*2d 479), and *State, by Commissioner of Transportation v. Stulman, supra* (136 *N.J.Super.* at 156, 345 *A.*2d 329), where we held that when the property being condemned is subject to an easement for the benefit of an adjacent property, an adjacent landowner who is deprived of his easement is entitled to a separate award. We stated:

> If land burdened with an easement is taken by eminent domain, the owner's measure of damages is the market value of the land as affected by the easement. The easement attaches to the land of the owner of the dominant fee and is appurtenant to his land, and must be valued with reference to it and not as though the easement constituted a separate entity. The owner of the dominant estate must be compensated for the value of the easement taken from him and the measure of damage is the difference in the market value of the dominant estate

with the easement and its value without the easement. [*Id.* (quoting *Jahr, Eminent Domain, Valuation and Procedure,* § 160 at 251 (1953)).]

Under the second category of cases, a "preexisting easement of access to and from a public highway, possessed by an owner of land abutting on such highway, constitutes a right of property of which he cannot be deprived without just compensation." *Mueller v. New Jersey Highway Authority, supra* (59 *N.J.Super.* at 589, 158 *A.*2d 343).

A property owner may not be shut off from access to his land, but there is a qualification to the usual principle of compensation. Where a reasonably suitable alternative means of access remains, compensation is not required because reasonable highway regulation will not give rise to a compensable taking. *State, by Commissioner of Transportation v. National Amusements, Inc., supra* (244 *N.J.Super.* at 223–224, 581 *A.*2d 1353). In that case, the State appealed from a judgment determining that the defendant was entitled to compensation for the termination of direct access between Route 1 and 9 and its property. *Id.* at 220, 581 *A.*2d 1353. Relying on *High Horizons Development Co. v. New Jersey Department of Transportation,* 120 *N.J.* 40, 48–49, 575 *A.*2d 1360 (1990), which stated "[r]easonable highway regulations will not give rise to a claim for compensable taking ... 'Limitation of access, so long as reasonable access to the highway system remains, is not a taking by eminent domain, but is accomplished under the police power, and not compensable,' " we reversed and remanded to determine the reasonableness of the new access. *State, by Commissioner of Transportation v. National Amusements, Inc., supra* (244 *N.J.Super.* at 224–225, 581 *A.*2d 1353). We also noted that the State Highway Access Management Act, *N.J.S.A.* 27:7–89 to 27:7–98, confirmed those principles by declaring:

e. Every owner of property which abuts a public road has a right of reasonable access to the general system of streets and highways in the State, but not to a particular means of access. The right of access is subject to regulation for the purpose of protecting the public health, safety and welfare.

f. Governmental entities through regulation may not eliminate all access to the general system of streets and highways without providing just compensation.

g. The access rights of an owner of property abutting a State highway must be held subordinate to the public's right and interest in a safe and efficient highway.
[*N.J.S.A.* 27:7–90.]

Moreover, the use of a more circuitous route does not necessarily constitute a compensable taking of property. *See State, by Commissioner of Transportation v. Monmouth Hills, Inc.*, 110 *N.J.Super.* 449, 452, 266 *A.2d* 133 (App.Div.), *certif. denied,* 57 *N.J.* 133, 270 *A.2d* 36 (1970); *State, by Commissioner of Transportation v. Charles Investment Corp., supra* (143 *N.J.Super.* at 544, 363 *A.2d* 944).

Here, there is a combination of both categories—the access cases and the easement cases. As noted, the pre-condemnation access easement onto Route 537 violated state highway regulations, *i.e.*, State Highway Access Management Code, *N.J.A.C.* 16:47–1.1, *et seq.*, which for safety reasons generally proscribes access points along acceleration lanes and along interchange ramps. The usual access cases are distinguishable, however, on the ground that the property owners claiming denied access abutted the highway. Here, Dikert's and Anselmo's properties do not abut Route 537, but had access to it across an easement on the land of others.

Although the State condemned the easement that had been reserved in the grant to the servient tenements that benefitted the Dikert and Anselmo properties, the easement cases relied upon by defendants [3] are nonetheless distinguishable from the instant case in that they do not address reasonable alternative means of access in the place of the easement and were decided before *High Horizons Development Co. v. Department of Transportation, supra* (120 *N.J.* at 48–49, 575 *A.2d* 1360), and enactment of the State Highway Access Management Act, *N.J.S.A.* 27:7–89 to 27:7–98, effective February 23, 1989. Because compensation in access

---

[3] They are essentially the first category of cases discussed where a servient tenement, including easement, are taken. *See supra* at p. 317, 725 *A.2d* 119.

cases is not required where a reasonable alternative means of access is provided, and the judge found that the State provided a reasonable means of access to ·Route 537, through the newly constructed service road and Pine Street,[4] no compensation was deemed necessary. Moreover, the State cut-off access from the easement pursuant to its police power, *High Horizons Development Co. v. Department of Transportation, supra* (120 *N.J.* at 48–49, 575 *A.*2d 1360), in an effort to protect the health, safety and welfare of travelers on Route 537. Accordingly, we affirm the trial court's decision that defendants here are not entitled to compensation.

## II.

Defendants also contend their counterclaim supports a cause of action for relief under takings law in that the setting of their property was transformed from a tranquil, rural area to a noisy, semi-urban, commercial environment. In essence, their claim is that the change in character of the land entitles them to an award of just compensation.

The State responds that Dikert and Anselmo are attempting to bootstrap their claims onto the Wawa claim because of the difficulty in meeting the burdens of an inverse condemnation [5] action or

---

[4] Based on the tract map provided in the record on this appeal, if traveling southbound on Route 537 from I–195, it appears from a rough measurement that persons travelling to defendants' properties would have to travel approximately 1,000 additional feet. If traveling northbound on Route 537, the additional travel distance via the service road and Pine Drive appears negligible.

[5] Through an inverse condemnation proceeding, a property owner seeks compensation for a de facto taking of his property. *Pinkowski v. Township of Montclair*, 299 *N.J.Super.* 557, 575, 691 *A.*2d 837 (App.Div.1997). "[A] property owner is barred from any claim to a right to inverse condemnation unless deprived of all or substantially all of the beneficial use of the totality of his property as the result of excessive police power regulation." *Orleans Builders & Developers v. Byrne*, 186 *N.J.Super.* 432, 446–447, 453 *A.*2d 200 (App.Div.1982) (citing *Penn Central Transportation Co. v. New York City*, 438 *U.S.* 104, 98 *S.Ct.* 2646, 57 *L. Ed.*2d 631 (1978), *reh'g denied*, 439 *U.S.* 883, 99 *S.Ct.* 226, 58 *L.*

an action under the Tort Claims Act, *N.J.S.A.* 59:4–2.[6]

On the other hand, Dikert and Anselmo claim that they are entitled to compensation based on a change in character of their land, which essentially decreased the value of their properties, or consequential damages.

> The general rule is that acts done in the proper exercise of governmental powers, or pursuant to authority conferred by a valid act of the legislature, and not directly encroaching on private property, although their consequences may impair its use or value, do not constitute a taking ... and do not entitle the owner of such property to compensation, in the absence of constitutional or statutory provisions requiring compensation to be made for damaging, injuring, or destroying property. [29A *C.J.S. Eminent Domain* § 84 at 238 (1996). *See also New Jersey Bell Telephone Co. v. Delaware River Joint Commission,* 125 *N.J.L.* 235, 237, 15 *A.2d* 221 (Sup.Ct.1940).]

In such exercise of governmental powers, the injury is considered *damnum absque injuria* and not compensable. *See State v. Whitehead Brothers Co., Inc.,* 210 *N.J.Super.* 359, 368, 509 *A.2d* 832 (Law Div.1986) ("New Jersey follows the rule that ordinary losses or other damages consequential to the taking, such as loss or destruction of goodwill, loss of profits, inability to relocate, and frustration of a condemnee's plans are too remote and uncertain to measure accurately."); *N.J. Sports and Exposition Authority v. Giant Realty Associates,* 143 *N.J.Super.* 338, 351, 362 *A.2d* 1312

---

*Ed.*2d 198 (1978)). In an inverse condemnation case, the "property owner is 'required to show that there has been a substantial destruction of the value of the property and that the defendant's activities have been a substantial factor in bringing this about.' " *Township of West Windsor v. Nierenberg,* 150 *N.J.* at 134, 695 *A.2d* 1344 (1997) (quoting *Washington Market Enterprises, Inc. v. City of Trenton,* 68 *N.J.* 107, 343 *A.2d* 408 (1975)).

[6] To establish a prima facie case under the Tort Claims Act, *N.J.S.A.* 59:4–2, the party must show that: (1) the property was in a dangerous condition at the time of the injury; (2) the condition proximately caused the injury; (3) the condition created a reasonably foreseeable risk of the injury that was incurred; and, (4) a public entity had notice in sufficient time to protect against the condition or the condition was created by the act or omission of a public employee acting within the scope of his employment. *See, e.g., Brown v. Brown,* 86 *N.J.* 565, 575, 432 *A.2d* 493 (1981). Once these elements are established, the party must establish that the action the public entity took or failed to take to protect against the condition was palpably unreasonable. *N.J.S.A.* 59:4–2.

(Law Div.1976) (governmental exercise of police power which does not destroy use and enjoyment is not compensable); *Cappture Realty Corp. v. Bd. of Adjustment of Borough of Elmwood Park*, 126 *N.J.Super.* 200, 313 *A.2d* 624 (Law Div.1973), *aff'd*, 133 *N.J.Super.* 216, 336 *A.2d* 30 (App.Div.1975) ("No right to compensation arises from valid exercise of the police power."); *see also DuBois v. State*, 54 *A.D.2d* 782, 387 *N.Y.S.2d* 753, 755 (App.Div. 1976), ("consequential damages are plainly limited to those which arise by reason of the use to which the State puts the property taken and do not encompass those which result from the taking of neighbor's land"). As is the case with many governmental actions, changes in highways may result in incidental detriment to nearby properties. *See State, by Commissioner of Transportation v. Charles Investment Corporation, supra* (143 *N.J.Super.* at 546, 363 *A.2d* 944); *State, by Commissioner of Transportation v. Stulman, supra* (136 *N.J.Super.* at 148, 345 *A.2d* 329) (rejecting owner's claim for compensation for the loss of visibility of his property because the loss resulted from the construction on property belonging to another).

The Law Division properly dismissed plaintiffs' claims as they are not compensable in the context of the instant condemnation.

## III.

■ Defendants argue that the judge erred in dismissing their counterclaim by misconstruing their claim as one for losses due to a change of access to their residential properties. They argue that their interests in the easements and their estates are inseparable, and they should be compensated with severance damages.

The State responds that defendants are not entitled to severance damages and distinguishes cases awarding severance damages on the grounds that they did not involve the taking of an easement. It also argues that defendants are not entitled to "severance damages," which are only available for partial takings, not where the property of adjoining or neighboring landowners is taken, relying on *Public Service Electric & Gas v. Oldwick*, 125

*N.J.Super.* 31, 308 *A.*2d 362 (App.Div.), *certif. denied,* 64 *N.J.* 153, 313 *A.*2d 213 (1973).

The taking of private property for a public use requires the property owner to be compensated, with the fair market value of the property at the date of the taking, where the whole property is taken, measured by what a willing buyer would pay a willing seller. *State, by Commissioner of Transportation v. Silver,* 92 *N.J.* 507, 513, 457 *A.*2d 463 (1983). But, where only a portion of the property is acquired, the measure of damages includes the value of the land taken, plus the decrease in the value of the remaining lands or the difference between the value of the entire tract before the taking and the value of the remainder after the taking. *State, by Commissioner of Transportation v. Weiswasser,* 149 *N.J.* 320, 329, 693 *A.*2d 864 (1997). The diminished value of the property is considered severance damages as a result of the condemnation. *State, by Commissioner of Transportation v. Silver, supra* (92 *N.J.* at 514, 457 *A.*2d 463). In a partial taking, a more exacting inquiry is made because it is necessary to value not only the property taken, but also the value of the remaining property. *Id.* at 515, 457 *A.*2d 463.

In cases involving severance damages, the owner of the condemned property is claiming that he is entitled to damages, resulting from the decrease in value of his remaining property. *See, e.g., State, by Commissioner of Transportation v. Weiswasser, supra* (149 *N.J.* at 329, 693 *A.*2d 864); *State, by Commissioner of Transportation v. Cooper Alloy Corp.,* 136 *N.J.Super.* 560, 565, 347 *A.*2d 365 (App.Div.1975); *Tennessee Gas Transmission Company v. Maze,* 45 *N.J.Super.* 496, 133 *A.*2d 28 (App.Div.1957). Severance damages may be awarded where the condemned parcel is physically separated from the remaining property, provided there is a unity of ownership among the properties and there is functional unity, such that the landowner may have suffered some decrease in value of the remaining parcel. *Housing Authority of Newark v. Norfolk Realty Co.,* 71 *N.J.* 314, 321–322, 364 *A.*2d 1052 (1976).

However, in severance cases, the condemned property owner is claiming that his remaining parcels suffered damages, not that his property suffered damages resulting from the taking of neighboring lands, as in this case. Here, the damages claimed by Dikert and Anselmo do not relate to the taking of their properties and the resulting damage to their remaining properties, rather it relates to the taking of another's property, namely, Wawa's property. Thus, defendants have no claim to severance damages.

In summary, the State condemned Wawa's property, which included an easement benefiting Dikert's and Anselmo's properties, but no portion of their lands were taken, only the easement from their land to the highway. The easement was taken under the police power relating to the safety and flow of traffic on Route 537, and the defendants were provided with a reasonable alternative means of access to replace the easement taken. Hence, Dikert and Anselmo cannot claim damage to their respective properties resulting from the exercise of the police powers or damage to their property from the construction on property taken from other parties.

Affirmed.