CON REALTY COMPANY, A BODY CORPORATE, PROSECU-
TOR, v. MEYER C. ELLENSTEIN, PEARCE R. FRANKLIN,
JOSEPH M. BYRNE, JR., AND VINCENT J. MURPHY,
CONSTITUTING THE BOARD OF COMMISSIONERS OF
THE CITY OF NEWARK, DEFENDANTS.

Submitted May 7, 1940—Decided July 17, 1940.

Before Justices Case, Donges and Heher.

For the prosecutor, *Kanter & Kanter* (*Elias A. Kanter,* of counsel).

For the defendants, *James F. X. O'Brien* (*Joseph A. Ward,* of counsel).

The opinion of the court was delivered by

Heher, J.   Prosecutor assails an ordinance adopted by the Board of Commissioners of the City of Newark on December 27th, 1939, providing for the vacation, among others, of a part of Sheffield Street as a public street or highway, in the exercise of the authority conferred by section 1, subdivision (b) of Article XXII of chapter 152 of the Laws of 1917 (*Pamph. L., pp.* 319, 404), as amended, now *R. S.* 1937, 40:67-1b.

The ordinance was designed to permit the consummation of a housing project undertaken by the Housing Authority of the City of Newark, a body corporate and politic created

under the authority of the United States Housing Act of 1937 (USCA Tit. 42, §§ 1401, *et seq.*) and chapter 19 of our session laws of 1938 (*Pamph. L., p.* 65; *R. S.* 55:14A-1, *et seq.*), pursuant to the grants of power therein also made.

Sheffield Street runs in a northerly course from Sussex Avenue to Orange Street.. It is intersected by James Street, at a distance of approximately 440 feet from Sussex Avenue and 490 feet from Orange Street. The portion thus vacated extends from a point about 180 feet north of Sussex Avenue to Orange Street, exclusive of the James Street intersection. Prosecutor is the owner of a tract of land fronting on the northerly side of Sussex Avenue, and extending back a distance of 180 feet along the easterly side of Sheffield Street and about 216 feet along the westerly side of Boyden Street, a highway generally parallel with Sheffield Street to the east; and it maintains thereon an automobile service station and showroom. Prosecutor's lands therefore do not abut on the vacated section of the highway.

The first ground of challenge is that the ordinance in this regard is "arbitrary and unreasonable."

More specifically, it is said that prosecutor "is left in a *cul-de-sac,* and he (*sic*) and the rest of the traveling public * * * must perforce use other streets;" that, since its lands are devoted to this special use "in a business area," the "importance of keeping Sheffield Street open as a thoroughfare, not only for the benefit of the prosecutor, but for the benefit of all businessmen, cannot be over-emphasized;" that the closing of the street will "divert the business of * * * valuable customers from the present existing facilities to another district;" and that the municipal water main, sewer, gas and like facilities beneath the street surface will be "within private property lines, not accessible for either repair or enlargement." Because of these considerations, the enactment is termed an "abuse of power."

There is nothing of substance in these contentions. The vacation of public streets and highways is essentially a legislative function. It is therefore a plenary and absolute power, subject only to constitutional limitations; and it may be delegated to the state's municipal subdivisions. Article IV,

section VII, *placitum* 11 of the State Constitution. The vacation of a street is not ordinarily deemed violative of private rights. It is in substance but the surrender or extinction of the public easement; and the consequential loss, if any, to the abutting landowners is not chargeable to the municipality. Except where there is statutory provision therefor, the law does not render compensation for losses resulting from a valid surrender of public rights. *Dodge* v. *Pennsylvania Railroad Co.*, 43 *N. J. Eq.* 351, 355; *affirmed*, 45 *Id.* 366; *Hoboken Land and Improvement Co.* v. *Mayor, &c., of Hoboken*, 36 *N. J. L.* 540, 549; *Reed* v. *Camden*, 54 *Id.* 347; *Kean* v. *Elizabeth*, 54 *Id.* 462; *affirmed*, 55 *Id.* 337; *United New Jersey Railroad and Canal Co.* v. *National Docks, &c., Co.*, 57 *Id.* 523; *Moore* v. *Haddonfield*, 62 *Id.* 386; *Newark* v. *Hall*, 79 *Id.* 548; *Newark, &c., Railroad Co.* v. *Montclair*, 84 *Id.* 46; *Sherwood* v. *City of Paterson*, 88 *Id.* 456; *affirmed*, 88 *Id.* 738; *Borough of Verona* v. *Essex Freeholders*, 88 *Id.* 55; *affirmed*, 89 *Id.* 373; *Klement* v. *Delaware River Joint, &c., Commission*, 119 *Id.* 600.

Where such power has been delegated, its exercise rests in the sound discretion of the governing body or other municipal agency to which it has been entrusted; and, in the absence of a provision for such superintendency, its affirmative exercise is not subject to judicial review, unless tainted with fraud, or palpably not in the service of the public interest, or otherwise a clear perversion of power. Here, the statute vests in the municipal governing body full and unrestricted power to vacate a public street or highway; and it is to be presumed that, in the enactment of the ordinance under review; the defendant governing body was moved by considerations of public welfare thus to exercise the statutory power. The policy and wisdom of a local legislative act within the allotted sphere, and not affected by the considerations above outlined, are not justiciable questions. *Reimer* v. *Allendale*, 123 *N. J. L.* 563; *Independent Pennsylvania Oil Co.* v. *Mayor, &c., Gloucester*, 102 *Id.* 502; *McGonnell* v. *Board of Commissioners of Orange*, 98 *Id.* 642; *North Jersey Street Railway Co.* v. *Jersey City*, 75 *Id.* 349; *Ivins* v. *Trenton*, 68 *Id.* 501; *affirmed*, 69 *Id.* 451; *Moore* v. *Haddonfield, supra*.

So appraised, the ordinance is in no sense vicious. It was plainly designed to serve what is now deemed to be a public interest of primary importance, *i. e.*, the provision of needed sanitary and safe dwelling accommodations for "persons of low income," and the elimination of existing "insanitary or unsafe housing conditions." *Vide Romano* v. *Housing Authority of Newark,* 123 *N. J. L.* 428; *affirmed,* 124 *Id.* 452.

The local housing authority is, by express statutory provision (*R. S.* 55:14A-4; 55:14A-20), constituted an "agency and instrumentality" of the municipality for the exercise of a function denominated "public and governmental;" and so (there being a reasonable basis for the statutory category) the vacation of a public street or highway for the fulfillment of its statutory mission serves the public at large and not a private interest. Compare *Rafetto* v. *Mott,* 60 *N. J. L.* 413; *Haynes* v. *Cape May,* 50 *Id.* 55; *Kean* v. *Elizabeth, supra.* See, also, *MacDonald* v. *Board of Street Commissioners of City of Boston,* 268 *Mass.* 288; 167 *N. E. Rep.* 417.

As to the underground facilities, it suffices to say that the interests of the community at large are amply protected by the terms of a "Co-operation Agreement" between the municipality and the local housing authority, whereby the municipality undertook to maintain these essential services.

Secondly, it is argued that the ordinance was "enacted as the result of a false and fraudulent representation by one claiming to own all the property abutting the vacated portions of Sheffield Street."

It is said that the Housing Authority "did not own all the property" abutting on the vacated portion of the street; and that "an ordinance enacted as the result of a misrepresentation cannot be said to be the reasoned act of the commissioners," and "is, therefore, in this respect, also unreasonable."

This point is plainly untenable. The housing project thus undertaken embraced all the abutting property. The Authority had acquired the greater part of the abutting lands by purchase or condemnation. As to the remainder, it had options to purchase or had instituted condemnation proceedings. The statute vesting in the local authority the power of eminent domain provides that, from the "filing" of the

"declaration of taking and the deposit in court to the use of the persons entitled thereto of the amount of the estimated compensation stated in said declaration, title to the property described as being taken by said declaration shall vest in the housing authority (free from the right, title, interest of (*sic*) lien of all persons), and said property shall be deemed to be condemned and taken for the use of the housing authority and the right to just compensation for the same shall vest in the persons entitled thereto." *Pamph. L.* 1938, *p.* 92; *R. S.* 20:1-36. The project had been approved in its entirety; and the necessary moneys had been allocated by the Federal Housing Authority.

Moreover, since it is not the owner of lands abutting upon a vacated portion of the highway, prosecutor does not have the status requisite to challenge the ordinance upon this ground.

It is also urged that the project "is capable of easy fulfillment, without using any part of Sheffield Street," and for this reason, too, the ordinance is unreasonable.

This is obviously a question for the discretion of the local authorities, and not for the judgment of the individual landowner.

While it is the established rule that an ordinance affecting the general public cannot be attacked on *certiorari* by "one who is only damnified as one of the public in common with his fellow-citizens" (*Unger* v. *Fanwood,* 69 *N. J. L.* 548), a rule was entered herein by consent providing that, in "determining this cause, it shall be assumed that, and the merits of the case shall be decided as if the writ of *certiorari* applied for had been duly allowed," and "respondents had duly made their return * * * of the ordinance," and that, if the ordinance be sustained, "a writ of *certiorari* shall then issue, and the appropriate judgment—without costs in favor of the respondents against the prosecutor—shall then be entered dismissing the writ of *certiorari;*" and so the writ shall issue, and, upon the return, judgment shall be entered dismissing it, without costs.