GOOD DEAL OF IVY HILL, INC., A CORPORATION OF THE STATE OF NEW JERSEY, PLAINTIFF-APPELLANT, v. CITY OF NEWARK, A MUNICIPAL CORPORATION OF THE STATE OF NEW JERSEY, *ET AL.*, DEFENDANTS-RESPONDENTS.

Argued February 23, 1960—Decided May 9, 1960.

Mr. *Leonard Lieberman* argued the cause for plaintiff-appellant (*Mr. Bernard Hellring,* attorney).

Mr. *James E. Abrams* argued the cause for defendants-respondents (*Mr. Vincent P. Torppey,* attorney; *Mr. Jacob M. Goldberg* and *Mr. Joseph A. Ward,* on the brief).

The opinion of the court was delivered by

FRANCIS, J.   Plaintiff is the lessee of a tract of land located wholly in the Town of Maplewood, New Jersey. Its westerly boundary fronts on a thoroughfare known as Irvington Avenue in that town; the easterly and southerly property lines border on the City of Newark; the northerly line is 341 feet long, more or less, all but 82.71 feet of which borders on Newark. A part of this northerly sideline, 60.25 feet in length, runs along the southern extremity of Eastern Parkway, a public street running generally north and south, and located wholly in the City of Newark, which comes to a dead end at that point. The terminus of the street at that portion of plaintiff's sideline is the boundary line between the two municipalities. No part of Eastern Parkway is in Maplewood and no part of plaintiff's property is in Newark.

The section of Newark through which Eastern Parkway passes and dead ends is a substantial one-family home district. The city erected (at a time not fixed in the testimony) and maintained for at least 15 years prior to October 1957 a two-rail wooden barrier, painted white, at the dead end of the street. This was long before plaintiff ever acquired its leasehold interest in the Maplewood property. The barrier extended across the full width of the vehicular traveled portion and was intended to mark the end of the roadway. It was designed in part at least as a safety measure, calling attention to the limitation on travel and serving to prevent vehicle operators from running upon plaintiff's land and perhaps suffering injurious consequences.

Plaintiff leased the Maplewood premises for the purpose of operating a supermarket. Prior thereto its representative

had made a survey of the area and was fully familiar with the barrier at the end of Eastern Parkway. The market, entrance to which was on Irvington Avenue in Maplewood, opened for business on October 14, 1958. Two weeks prior thereto Newark had declined to accede to a request by plaintiff that the barricade be removed. In fact, two days after the opening, the city extended it beyond the curb line, thereby blocking the ends of the public sidewalks on both sides of the street. The rear of the supermarket building, where the loading and unloading platform is located, · is fairly close to the railing. Other nearby portions of the grounds are used for customer parking. There is no doubt that it would be a valuable accommodation to the plaintiff if the trucks and parkers could invade Newark's residential area by using Eastern Parkway as a means of entrance, and particularly of exit.

It is undisputed that Eastern Parkway was never used for ingress or egress from plaintiff's lessor's premises. And there is not the slightest intimation in the record that any condition of the back title would justify a claim of right to do so. It is of interest to note that at the time of the hearing herein, an additional entranceway from Irvington Avenue was under construction by plaintiff.

The present action was instituted nine days after plaintiff's opening. The relief sought is a mandatory injunction requiring removal of the barrier and damages for loss of business allegedly resulting from the failure to have adequate entrance and exit passages for its customers. The trial court denied the injunction and entered judgment for the city. Review was then sought in the Appellate Division and we certified the matter before argument in that tribunal.

■ A municipal corporation is a creature of the Legislature. Its powers are derived from that source and to some extent from the Constitution. See, *e. g., Art.* 4, § 7, *par.* 11, *1947 Constitution.* Its boundaries are established by the Legislature. *Lower Township v. City of Wildwood,* 130 *N. J. L.* 186 (*E. & A.* 1943), affirming 129 *N. J. L.* 22

(*Sup. Ct.* 1942). Such boundaries mark the limit of the local government's jurisdiction and authority. 2 *McQuillin, Municipal Corporations* (*3d ed.* 1949), § 7.02, *p.* 256. No extramural authority exists unless expressly granted. 2 *McQuillin, supra,* § 10.07, *p.* 590. For example, see *Aviation Services v. Bd. of Adjustment of Hanover Tp.,* 20 *N. J.* 275, 282–283 (1956); *Borough of Verona v. Township of Cedar Grove,* 49 *N. J. Super.* 293 (*Law Div.* 1958).

■ Obviously, a municipal corporation may lay out and construct public streets within its borders. Such streets may be treated as a local improvement and the property owners benefited may be assessed according to the benefits received. *N. J. S. A.* 40:56–1. Authority exists in some situations to extend a road into an adjoining municipality. *N. J. S. A.* 40:56–3; *Borough of Verona v. Township of Cedar Grove, supra.* In such case, if the extension is declared a local improvement, assessments for benefits may be imposed "on any lands or real estate benefited thereby *in the municipality laying out,* opening and constructing such street or highway." *R. S.* 40:56–2. (Emphasis added) The legislative implication is plain that property owners in the adjoining municipality cannot be subjected to a charge for the improvement.

Undoubtedly a local governing body may build a road and terminate it at the boundary line of the municipality, or some distance short of that line. There is no duty to go farther in order to provide access to the road for a citizen of the adjoining community whose land is just beyond the geographical limit. In any event, the municipality creating the improvement has neither power nor jurisdiction to impose any assessment therefor on the property owner over the line.

At the oral argument the parties were in agreement that if defendant had ended Eastern Parkway a few feet short of the dividing line between Newark and Maplewood and erected a wall from the terminus of the road to the Maplewood line, plaintiff would have no right to seek removal of the obstacle. This is because if any land intervened, the

plaintiff could not be considered an abutter. *Royal Transit v. Village of West Milwaukee,* 266 *Wis.* 271, 63 *N. W. 2d* 62 (*Sup. Ct.* 1954) ; 10 *McQuillin, supra,* § 30.55, *p.* 657. In this case, the fence and its supporting posts mark the boundary line, all of the physical structure being on the Newark side. The survey in evidence seems to show the fence a little bit north, that is, on the Newark side, of the line. The distance is not indicated, nor was the surveyor produced, and throughout the proceedings the parties dealt with the matter on the basis that the fence was at the boundary line. Nevertheless, we fail to perceive why the principle to be applied in the determination of the case should be any different if the fence ended ten feet short of the city limit rather than precisely on it.

▮ The briefs contain much argument on the question whether plaintiff is entitled to use Eastern Parkway as an abutting owner. Concededly it has no ownership or interest in the roadbed. Ordinarily, abutting owners are spoken of as those whose property fronts on the sidelines of a street. Such persons clearly cannot be denied access. *Barnett v. Johnson,* 15 *N. J. Eq.* 481 (*E. & A.* 1863). The courts of this State have not had occasion to decide whether an owner of land, a portion of the *sideline* of which land is at the terminus of a dead end street, is an abutting owner. In some jurisdictions it has been held that the owner of premises at the end of a *cul-de-sac* is not an abutter. *Frisco-ville Realty Co. v. Police Jury,* 127 *La.* 318, 53 *So.* 578 (*Sup. Ct.* 1910) ; *Kingshighway Supply Co. v. Banner Iron Works,* 266 *Mo.* 138, 181 *S. W.* 30 (*Sup. Ct.* 1915) ; *Goldrich v. Franklin Gardens Corp.,* 282 *App. Div.* 698, 122 *N. Y. S. 2d* 56 (1953) ; *Thomas v. Jultak,* 68 *Wyo.* 198, 231 *P. 2d* 974 (*Sup. Ct.* 1951). In others, where the public road has been used for a long time as a means of access or is a necessary means of access to such land, the owner thereof has been declared an abutter. *Johnson v. Town of Watertown,* 131 *Conn.* 84, 38 *A. 2d* 1 (*Sup. Ct. Err.* 1944) ; *Messinger v. City of Cincinnati,* 36 *Ohio App.* 337, 173 *N. E.*

260 (*Ct. App.* 1930); *Royal Transit v. Village of West Milwaukee, supra.* In the case before us it is pertinent to note that Eastern Parkway is not necessary for purposes of ingress or egress to and from plaintiff's premises, and that it has never been used for such purpose, even as a matter of convenience. On the contrary, the facts demonstrate a clear intention by the city to provide a public road terminating at its border and to prevent the non-resident plaintiff from using it as an incidental additional and convenient means of access to its land. In our judgment, the test to be applied in the factual context of this case (and our holding extends no farther than this case) in deciding if plaintiff is an abutting owner, is whether its property would be subject to assessment for construction or improvement of the street. *Kingshighway Supply Co. v. Banner Iron Works, supra.* Manifestly, the Legislature has provided no basis for any such charge.

But of greater significance in evaluating the claim of right of use and of more crucial pertinence to the determination of the precise issue presented here is the question whether plaintiff could stand in the way of vacation of the street should Newark decide to do so. In this connection, it must be kept in mind that we are not dealing with a public street which connects at the boundary line of Newark with a street in Maplewood and so forms part of a traffic communication system between the two municipalities. In such a situation the right of the governing body of either to vacate or close off its street would be open to serious question. *Cf. City of Gary v. Much,* 180 *Ind.* 26, 101 *N. E.* 4 (*Sup. Ct.* 1913); *Messinger v. City of Cincinnati, supra.* Nor are we considering a case where Eastern Parkway constitutes a way of necessity into plaintiff's land; nor a situation where, as a matter of convenience, it had been used for access over many years; or even a case where plaintiff's property, though at the end of a *cul-de-sac,* is in the *same* municipality as the street involved. Plaintiff's property is foreign to Newark, its lessor-owner could not

be burdened with an assessment for opening or improving the street, and he has no easement rights therein. As a logical consequence of these factors neither plaintiff nor his lessor could defeat vacation of the Parkway.

In *House v. City of Greensburg, 93 Ind.* 533 *(Sup. Ct.* 1833), the plaintiff owned real estate south of, and immediately adjacent to, the City of Greensburg. East Street in that city ran north and south, and its south end terminated at the north line of plaintiff's property. Plaintiff had a private roadway from his stone quarries and residence which ran across his land to East Street. The city proposed to vacate East Street and plaintiff complained that he would be deprived of the most direct right of way from his real estate to the city. The controlling statute provided that any property owner immediately upon the line of a street to be vacated and who is directly interested therein, might object, in which event the council would have no power to proceed with the vacation.

In disposing of plaintiff's objection, the court said:

"The complaint, therefore, fairly presents for decision this question: Can a non-resident land-owner, whose land is outside of, but abuts upon, the corporation line of an incorporated city, be heard to complain of the action of the common council of such city in the vacation of a street or part of a street, within the city limits, upon the terminus of which such land also abuts? We are of opinion that this question must be answered in the negative. By the finding of the city commissioners, and by his own showing, the appellant is *not* a 'property-owner immediately upon the line' of the part of East Street, proposed to be vacated." *Supra*, at *page* 538.

The opinion then declared that when the statute spoke of a property owner who has a direct or substantial interest in the street to be vacated, it meant a property owner of the city only. The court continued:

"The appellant shows in his complaint, and it is shown, also, by the report of the city commissioners, that he is not such a property owner, as, under the statute, is authorized to object to the proposed vacation of East Street. It is clear, therefore, as it seems to us, that the appellant has no standing in court to complain of the

action of the appellee in the vacation of East Street, however much it may affect his private interests, and however much inconvenience may result to him therefrom. He is a stranger to the municipality, and, for this reason, has no direct or substantial interest in any of its public streets, within the meaning of the city charter." *Supra,* at *page* 539.

*Thomas v. Juliak, supra,* expresses a similar view. There one of the plaintiffs, Wyatt Manufacturing Company, owned premises which fronted on a substantial highway. The easterly boundary of the lot was at the westerly limit of the City of Cheyenne. On the city side of the line, opposite a portion of the factory property, there was a public alley which dead-ended at the line and ran easterly for a block to the next public street. The city decided to vacate the most westerly portion of the alley up to the boundary line, the effect of which was to shorten the *cul-de-sac.* Plaintiffs' objection to the proposed action was overruled by the Supreme Court of Wyoming, which said:

"There is no street or alley or other passageway to the west of the alley here in question. It was always a cul-de-sac from the beginning." 231 *P. 2d,* at *page* 984.

"One factor enters into this case which does not enter into the cases on the subject generally, and that is the fact that the property of the manufacturing company *is outside of the limits of the city.* It is true that highways in municipalities are for the use of the public at large, and not only for the use of the people living within the municipality. 3 *Dillon, Municipal Corporations,* (5th Ed.) *Section* 1122. But that does not necessarily mean that the owner of property outside of the city limits has identically the same rights as property owners within the limits. For instance, it is held that every purchaser of a lot in the city, according to the dedicated plat, has the right[s] to have the designated scheme of public ways and places maintained in its integrity. [Citations omitted.] That arises by reason of the purchase of lots according to the plat. But it is hardly logical to hold that the identical rights must be extended to one who has not bought any lots and whose property is outside of the limits of the city. And the question arises why an owner of property outside the limits of the city should have the right to control the lawful exercise of the powers of the municipal authorities." *Supra,* at *page* 986. (Emphasis added)

"The Lincoln Highway is a 'through' highway and we do not doubt that the manufacturing company plaintiff has the right of continued access to it. But there is no special reason why such

right should extend to the alley here in question which was laid out primarily for the benefit of the parties in the block when it was dedicated as a part of the City of Cheyenne." *Supra*, at *page* 987.

The matters expressed above are most pertinent to a consideration of the problem in terms of the right of the City to erect the barrier. The factor of obligation to do so, particularly with regard to vehicle travel, is likewise worthy of mention. When a municipality constructs a dead-end street, a duty exists commensurate with the danger presented by the physical surroundings to erect fences or railings or to notify the traveling public in some manner of the terminal point of the road so that they will not run beyond it into any danger that may lurk there. *Hartman v. City of Brigantine*, 23 *N. J.* 530 (1957); *Ollgaard v. City of Marshall*, 208 *Minn.* 384, 294 *N. W.* 228 (*Sup. Ct.* 1940); 19 *McQuillin, supra*, § 54.90, *p.* 331.

This case is one of novel impression in New Jersey. Neither our reports nor those of any other state reveal a case of precisely the same type, despite the fact that the rights of owners of land abutting on a public highway have been a fruitful source of litigation in all of the states. See *Sauer v. City of New York*, 206 *U. S.* 536, 27 *S. Ct.* 686, 51 *L. Ed.* 1176 (1907). After careful consideration of the question, however, we are convinced that the Indiana and Wyoming cases project a sound viewpoint, one which ought to control the issue before us. Accordingly, we hold that defendant city was within its governmental authority in erecting the railing at the end of Eastern Parkway and in refusing to remove it at plaintiff's request.

The judgment of the Law Division is therefore affirmed.

*For affirmance*—Chief Justice WEINTRAUB, and Justices BURLING, JACOBS, FRANCIS, PROCTOR, HALL and SCHETTINO—7.

*For reversal*—None.