791 A.2d 228 (2002)
347 N.J. Super. 573
HOWELL PROPERTIES, INC., a New Jersey Corporation, Plaintiff-Respondent,
v.
TOWNSHIP OF BRICK, County of Ocean, State of New Jersey, a Municipal Corporation of the State of New Jersey, Township Council of the Township of Brick, Township of Howell, County of Monmouth, State of New Jersey, A Municipal Corporation of the State of New Jersey, Township Council of the Township of Howell, Defendants-Appellants,
and The Planning Board of the Township of Howell, Defendant.
Superior Court of New Jersey, Appellate Division.
Argued December 17, 2001.
Decided February 13, 2002.
*229 Scott W. Kenneally, Brielle, argued the cause for appellants Township of Brick and Township Council of the Township of Brick (Starkey, Kelly, Blaney & White, attorneys; Charles E. Starkey, of counsel; Mr. Kenneally, on the brief).
Sandra DeSarno Hlatky argued the cause for appellants Township of Howell and Township Council of the Township of Howell (Schibell & Mennie, attorneys; Richard D. Schibell, of counsel; Ms. Hlatky, on the brief).
Stewart M. Hutt, Woodbridge, argued the cause for respondent Howell Properties, Inc. (Hutt & Shimanowitz, attorneys; Mr. Hutt, of counsel and on the brief).
Before Judges HAVEY, COBURN and WEISSBARD.
The opinion of the court was delivered by HAVEY, P.J.A.D.
These back-to-back appeals, consolidated for the purpose of this opinion, present a unique land-use issue. May municipalities, in this case defendants Howell and Brick Townships, vacate streets which extend to a proposed major subdivision situated in adjoining Wall Township, the result of which renders the property landlocked? The trial court granted summary judgment to plaintiff Howell Properties, Inc., owner of the subject property, declaring the vacation ordinances "null and void." We affirm. We hold that adoption of the ordinances constituted an unlawful exercise of defendants' legislative power because the vacation of the streets do not serve the "public interest." N.J.S.A. 40:67-19.
The essential facts are not in dispute. The subject property, Block 977, Lots 5, 16 and 18, is located at the extreme southern tip of Wall Township. It is bounded on the north by a stream corridor of freshwater wetlands, on the east by the boundary line between Wall and Howell, and on the south and southwest by the Garden State Parkway right-of-way line and the municipal boundary of Brick. The property is part of a larger tract once owned by Laurel Manor Associates. In 1983, Howell Township Planning Board approved a subdivision known as Laurel Manor, Section 7, consisting of approximately fifty single-family homes. The subdivision plan shows two roads with fifty feet rights-of-way, Cherry Lane and Redbud Lane, ending at the Wall Township line and connecting to the subject property, with the notation "reserved for future road." Both streets are paved.
Brick approved a subdivision plan submitted by Laurel Manor Associates in 1989 *230 for a smaller development of single-family homes. One of the subdivision's roadways, Maypink Lane, ends in a paved cul-de-sac abutting Wall Township and plaintiff's property. According to the subdivision map, Maypink Lane, having a fifty foot right-of-way, actually extends to the border of plaintiff's property. A notation on the subdivision plan states that the cul-desac is a "temporary cul-de-sac easement to be removed on extension of Maypink Lane." At the time the Brick and Wall Township subdivisions were approved, Wall Township zoned the subject property for single-family dwellings on two-acre lots, allowing construction of only eighteen homes.
Laurel Manor Associates was one of several builders who instituted exclusionary zoning litigation against Wall in 1987. On September 12, 1990, Judge Serpentelli entered a consent judgment in the Mount Laurel[1] litigation which approved Wall Township's fair share plan, the major components of which consisted of four inclusionary developments with 264 affordable units, and regional contribution agreements with Neptune and Long Branch for 400 units. The judgment recited that Wall desired to meet a part of its Mount Laurel obligation through voluntary contributions from private developers, and toward that end Laurel Manor Associates agreed to develop the subject property for 120 single-family dwellings at a density of three units per acre, and to contribute $10,000 per unit toward Wall's affordable housing trust fund, or a total contribution of $1,200,000. The concept plan showed access to the property from Maypink Lane in Brick and from Cherry Lane and Redbud Lane in Howell.
Plaintiff acquired the subject property in August 1995. Wall Township agreed to rezone the property for approximately 180 single-family age-restricted dwellings (fifty-five years and older) and in 1997 Wall adopted an amended zoning ordinance creating the MLC-RAC-2 zone which provided for a density of 3.6 units per acre. No appeal from the amended ordinance was taken by any interested party. In return, plaintiff agreed to contribute $900,000 to Wall's affordable housing trust fund ($5000 per unit). On March 6, 1998, Judge Serpentelli entered an amended consent judgment in the Mount Laurel case approving the development of plaintiff's property at approximately three-and-a-half units per acre in exchange for a contribution of $5000 per unit.
Plaintiff's proposed subdivision application initially called for access through Cherry and Redbud Lanes. Plaintiff revised its plan during the lengthy Planning Board hearings to include access from Maypink Lane in Brick. Several residents and officials of Brick and Howell appeared and objected to the road connections. Howell's engineer criticized the proposal for several reasons, including the adverse impact the additional traffic may have on the residential development around Cherry and Rosebud Lanes.
On December 31, 1998, Brick adopted an ordinance vacating the portion of Maypink Lane which abutted plaintiff's property. Howell adopted an ordinance vacating the portions of Redbud Lane and Cherry Lane which abutted plaintiff's property on February 16, 1999.
Plaintiff filed suit, demanding inter alia, *231 that the ordinances be declared invalid.[2] Thereafter, the Wall Planning Board approved plaintiff's preliminary major subdivision, conditioned upon plaintiff prevailing in its law suit to secure access to the property through Howell and Brick.
In granting summary judgment to plaintiff, the trial court held that defendants, as adjoining municipalities, had a duty to facilitate plaintiff's development by providing vehicular access because the development was a component of Wall Township's Mount Laurel compliance plan. The court further determined that "wholly aside" from defendants' Mount Laurel obligation to facilitate, the vacation of the streets was unlawful because it denied plaintiff "reasonable access to ... public streets."
Before deciding the summary judgment motion, the trial court carried the matter to give defendants an opportunity to present evidence that there were alternate means of access available to plaintiff other than the three streets in Howell and Brick. Defendants did not present any such evidence. Consequently, we cannot disagree with the trial court's factual conclusion that plaintiff's property is essentially landlocked without access through the three streets in question. A portion of the property abuts the Garden State Parkway to which no access is afforded. To the north the property is bounded by a stream corridor and freshwater wetlands, over which access is not permitted.[3]
The unique inter-municipal dispute before us, involving landlocked property, implicates three competing principles. The first is that a property owner has a right to reasonable access to the public highway system. High Horizons Dev. Co. v. State, Dep't of Transp., 120 N.J. 40, 48-49, 575 A.2d 1360 (1990); Lima & Sons, Inc. v. Borough of Ramsey, 269 N.J.Super. 469, 477, 635 A.2d 1007 (App.Div.1994); Mueller v. New Jersey Highway Auth., 59 N.J.Super. 583, 595, 158 A.2d 343 (App. Div.1960). "What constitutes reasonable access is [ordinarily] a question of fact." Mueller, supra, 59 N.J.Super. at 595, 158 A.2d 343. The reasonableness of a property owner's access "in turn is dependent upon the use of the property and the expected traffic flow." State, Comm'r of Transp. v. Nat. Amusements, Inc., 244 N.J.Super. 219, 225, 581 A.2d 1353 (App. Div.1990), certif. denied, 127 N.J. 327, 604 A.2d 601 (1991). This "reasonableness" standard is usually implicated where the State denies an access permit or alters or revokes an existing means of access to a public highway, and the issue is whether the affected property owner is entitled to compensation. See High Horizons Dev. Co., supra, 120 N.J. at 48-49, 575 A.2d 1360; State, Comm'r of Transp., supra, 244 N.J.Super. at 223-24, 581 A.2d 1353. No case has considered the reasonableness issue in the context before us, where neighboring municipalities have landlocked property by the vacation of streets.
The second principle implicated is a municipality's unquestioned legislative authority to regulate property within its boundary *232 lines by the exercise of its power to zone. Bow & Arrow Manor, Inc. v. Town of West Orange, 63 N.J. 335, 345, 307 A.2d 563 (1973). The exercise of that authority, of course, must advance one of the purposes of the Municipal Land Use Law (MLUL), N.J.S.A. 40:55D-2, Riggs v. Tp. Long Beach, 109 N.J. 601, 611, 538 A.2d 808 (1988), including consideration of the general welfare of neighboring municipalities. N.J.S.A. 40:55D-2d.
The third principle is that any municipality may enact an ordinance to vacate a public street. N.J.S.A. 40:67-19.
Whenever there shall have been a dedication of lands as a public street or highway or a public square or public place, and the same has not been accepted or opened by the municipality, and it shall appear to the governing body that the public interest will be better served by releasing those lands or any part thereof from such dedication, the governing body may by ordinance release and extinguish the public right arising from said dedication as to the whole or any part of those lands, and thereupon said lands or the part thereof so released shall be effectually discharged therefrom as though the dedication had not taken place; but only after notice of the intention of the governing body to consider any such ordinance, and a hearing thereon, shall have been given as provided in section 40:49-6 of this title concerning ordinances for the vacation of streets.
[N.J.S.A. 40:67-19 (emphasis added).]
Plainly, the controlling criterion under the statute is whether the vacation of the street will serve the "public interest." Pyatt v. Mayor & Council of Dunellen, 9 N.J. 548, 553, 89 A.2d 1 (1952); see also 11 McQuillin Municipal Corporations § 30.185 (3rd Ed.2000) ("In the vacation of streets the public interest and conveniences is the prime consideration...."). "To that inquiry whatever is relevant for or against the proposed closing and bears upon the public interest in the particular circumstances ordinarily not only may, but should, be considered." Pyatt, supra, 9 N.J. at 553, 89 A.2d 1. Our function is confined to a determination whether factors other than the public interest and welfare have influenced the governing body's legislative action. Ibid. While the vacation ordinances, in another setting, might be a valid exercise of municipal power, "they must be viewed in the light of the present factual context, in order to ascertain the quality of those acts." Palisades Properties, Inc. v. Brunetti, 44 N.J. 117, 132, 207 A.2d 522 (1965).
We are convinced that, in deciding what is in "the public interest," courts should not confine themselves exclusively to the parochial interest of the municipality invoking its power to vacate. Opinions in the land-use context have emphasized the obligation of a municipality to consider the welfare of the region when the governing body exercises its legislative authority. Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 238, 456 A.2d 390 (1983) ("zoning in accordance with regional considerations is not only permissible, it is mandated"); Quinton v. Edison Park Dev. Corp., 59 N.J. 571, 578, 285 A.2d 5 (1971); Urban Farms, Inc. v. Borough of Franklin Lakes, 179 N.J.Super. 203, 213, 431 A.2d 163 (App.Div.), certif. denied, 87 N.J. 428, 434 A.2d 1099 (1981). "The insularity and parochialism of the Chinese wall theory of municipal zoning has long since been discredited." Urban Farms, Inc., supra, 179 N.J.Super. at 213, 431 A.2d 163. The MLUL itself recognizes this principle, by providing that one purpose of zoning is "to ensure that the development of individual municipalities does not conflict with the *233 development and general welfare of neighboring municipalities...." N.J.S.A. 40:55D-2d. Because zoning powers are derived from the State's general authority, a zoning decision "must consider the welfare of all the State's citizens, not just the interests of the inhabitants in the particular locality." Lusardi v. Curtis Point Prop. Owners Ass'n, 86 N.J. 217, 227, 430 A.2d 881 (1981) (citing Mount Laurel I, supra, 67 N.J. at 178, 336 A.2d 713).
We recognize that the municipal actions being challenged here are not the adoption of zoning ordinances. However, zoning considerations undergird this dispute, as defendants acknowledge when they admit that they would not have vacated these streets had Wall Township retained its large lot zoning under its prior ordinance for plaintiff's tract. Indeed, the reason for the action was the size of the development and extent of traffic it would generate. In Mount Laurel II, supra, 92 N.J. at 208, 456 A.2d 390, the Court noted that the "constitutional power to zone, delegated to the municipalities subject to legislation, is but one portion of the police power and, as such, must be exercised for the general welfare," which includes accounting for regional needs. Since "the general welfare" requires consideration of regional needs, the phrase "public interest," used in N.J.S.A. 40:67-19, likewise demands that a municipality look beyond its own borders in determining whether its legislative act serves the "public interest" in general.
No New Jersey case has addressed the question whether one municipality may vacate existing streets in order to prevent a development in an adjoining town from having access through that municipality. However, other courts have addressed the issue. In Yarrow First Assocs. v. Town of Clyde Hill, 66 Wash.2d 371, 403 P.2d 49 (1965), the Washington Supreme Court invalidated the vacation of a street as contrary to the public good when the proofs showed that the municipality was attempting to advance its own interest at the expense of the region. Plaintiff intended to build an apartment building consisting of eighty-nine family units in the municipality adjoining the defendant town. Plaintiff's only access was by way of a street in a neighborhood which defendant had zoned for single-family residential use. Defendant vacated a portion of the street, thereby landlocking plaintiff's property. Id. at 52.
The court reversed, concluding that the defendant closed the street because nonresidents would use it "without paying taxes or contributing to construction or maintenance...." Ibid. The court held that "[i]n closing a public street, the `Public Use' that must be considered is broader and more inclusive than the mere use by abutting property owners." Id. at 53. The public use doctrine "refers not alone to adjacent property owners, nor to the inhabitants of a particular political subdivision, but to the whole people." Ibid. Explained the court:
This case presents a prime example of the difficulties engendered by one municipality attempting to deny its neighbors the use of its streets. In recent years, numerous towns have developed around Lake Washington. They have clustered together with interlocking city lines. No doubt there are numerous conflicting ordinances and community interests. However, if each town was permitted to close the streets to its neighbors because they increased traffic flow without paying taxes, or because they desired to punish the adjoining town for having a conflicting zoning ordinance, chaos would result. Each town could be landlocked by its neighbors. No traffic would move. Commerce would die. The legal barriers, *234 though written on paper, would be as effective as if constructed of concrete blocks. To state the proposition is to refute it.[4]
[Id. at 53-54.]
In contrast, a divided Ohio Supreme Court upheld the vacation of the street which bordered on the defendant municipality because "vacation ... was necessary to prevent the changing of quiet residential streets into thoroughfares between [the two municipalities]." Eastland Woods v. City of Tallmadge, 2 Ohio St.3d 185, 443 N.E.2d 972, 974 (1983). However, a dissenting opinion examined what it perceived to be the real motive for vacating the street, to prevent the construction of a development "for low income families, subsidized by federal funds," which "would include blacks as residents." Id. at 976 (Brown, J., dissenting). Citing Yarrow, supra, the dissent argued that "vacation necessarily restricts the free flow of travel and is thus against this state's public policy which favors unobstructed passage along roads between communities." Id. at 977. "In a case such as this where the vacation of a public street of one municipality affects so vitally the essential right of the citizens of the adjoining municipality, the legislating body must balance the conflicting needs of each community." Ibid.
We find the discussion and holding in Yarrow persuasive. Defendant Howell, in its appellate brief, states that Howell and Brick vacated their streets:
[w]hen it became apparent that the Township of Wall ... was reaping all of the benefits and none of the burdens from the adult development which had no access to its roads and would not be a burden to its schools yet would yield both real property taxes and payment into its affordable housing trust fund was going to approve [plaintiff's] development project,....[5]
We believe this observation to be too parochial a view. The fact that Wall will receive funds to build affordable housing for the poor and may enjoy a tax benefit by approving a senior citizen development cannot reasonably be considered a valid basis to landlock plaintiff's property.
Moreover, we must not lose sight of the fundamental premise that the public use of streets is broader than the mere use by residents of a single municipality. Although the Legislature granted municipalities broad power to regulate their streets, N.J.S.A. 40:67-1, that power does not include the right to prohibit their use by nonresidents. Yarrow, supra, 403 P.2d at 54. The obvious purpose of streets is use for travel by the public "and this refers not alone to adjacent owners, ... but to the whole people." 11 McQuillin Municipal Corporations, supra, § 30.156 at 4-5. A municipality is not empowered to vest in a particular area of a town "proprietary rights in the streets superior to or exclusive of use by the general public." Id. at 5. The vacation ordinances adopted by defendants violate this well-settled principle. *235 The action cannot be deemed in "the public interest" when the rights of plaintiff and other members of the general public to use these streets are considered.
Further, the fact that the subject property is a component of Wall Township's Mount Laurel compliance plan is significant. As noted, the trial court held that, because plaintiff will be contributing $5,000 per unit to Wall Township's affordable housing trust fund, defendants had a duty under Mount Laurel to facilitate the development by providing access to it.
After judgment was entered by the trial court, our court decided Bi-County Dev. of Clinton, Inc. v. Borough of High Bridge, 341 N.J.Super. 229, 231, 775 A.2d 182 (App.Div.), certif. granted, 170 N.J. 387, 788 A.2d 772 (2001) (holding that a developer that pays money into a municipality's affordable housing fund in lieu of constructing affordable units on the site does not have a right to connect into the sewer system of an adjoining municipality). The developer, Bi-County, was granted approval as part of a settlement of a Mount Laurel case against Clinton Township to construct 105 single-family units and a 10,000 square foot commercial building on a 46.2 acre tract. In turn, Bi-County agreed to pay into Clinton Township's affordable housing fund $2,000 per unit. Id. at 231-32, 775 A.2d 182. Bi-County argued that the adjoining municipality, the Borough of High Bridge, had an obligation to permit it to connect into High Bridge's sewer system in order to eliminate "undue cost generating practices" that may prevent construction of its "inclusionary" Mount Laurel development. Id. at 236, 775 A.2d 182. The court rejected the argument, concluding that Bi-County was not entitled to relief "because it does not plan to construct lower income housing." Id. at 237, 775 A.2d 182. Defendants argue that the Bi-County decision compels a reversal of the summary judgment order in plaintiff's favor. We do not agree.
Bi-County is clearly distinguishable. First, denial of Bi-County's right to connect into High Bridge's sewer system did not prevent Bi-County from developing its tract. The developer had alternative means of acquiring sewer service by connecting to the Chester Township Municipal Sewerage Authority system. That plan, however, required Bi-County to extend a sewer line along Route 31. The developer opted to avoid this cost by connecting to High Bridge's system. Id. at 232-33, 775 A.2d 182. In this case, plaintiff has no alternative means of access other than through defendants' streets. Consequently, without the access, it cannot build its development.
Second, in Bi-County, High Bridge was a passive actor in the sense that it had taken no affirmative action to prevent Bi County's development; it simply wanted to reserve the use of its system for its own residents. Id. at 231, 775 A.2d 182. The issue was whether High Bridge had a duty to provide Bi-County with sewer service, the result of which would permit the developer to reduce off-site improvement costs and thus allow it to turn a greater profit. Id. at 237, 775 A.2d 182. Here, unlike High Bridge, defendants acted affirmatively by vacating the streets, thereby rendering plaintiff's property landlocked. The question in our case, not implicated in Bi-County, is whether such action served "the public interest." N.J.S.A. 40:67-19.
Defendants' vacation ordinances essentially trump Wall Township's reasonable efforts to satisfy its Mount Laurel obligation by precluding development on a site deemed suitable for plaintiff's proposal,[6] *236 and which will serve a regional and statewide interest by generating funds for the construction of low-cost housing. "As compared with relatively random and rigid set-aside zoning, development fees provide a more flexible and comprehensive approach that will encourage the appropriate use and development of land within a municipality to satisfy the municipality's fair-share housing obligation." Holmdel Builders Ass'n v. Tp. of Holmdel, 121 N.J. 550, 569-70, 583 A.2d 277 (1990) (citing Mount Laurel II, supra, 92 N.J. at 214-15, 456 A.2d 390). Defendants' actions clearly frustrate that regional and statewide interest. The effect of the vacations is that defendants hold plaintiff and Wall Township captive. They seek to dictate Wall's legislative zoning choices by stating that they will reopen their streets if Wall and plaintiff agree to reduce the density of plaintiff's proposal to the two-acre lot zoning previously permitted, or to some other density defendants consider acceptable. We do not regard such action as a valid exercise of power under the vacating statute.
Instead of landlocking plaintiff's property, defendants' remedy was to challenge adoption by Wall of the amended zoning ordinance placing plaintiff's site in the MLC-RAC-2 zone which permitted a density of 3.6 units per gross acre. Defendants clearly had standing to make such a challenge. See Home Builders League of So. Jersey v. Tp. of Berlin, 81 N.J. 127, 131-35, 405 A.2d 381 (1979) (recognizing the State's liberal approach to standing in zoning cases and the MLUL's broad definition of "interested party"); see also N.J.S.A. 40:55D-15a (requiring notice of adjoining municipalities of hearing involving adoption of revision of a development regulation). Defendants were on notice of both the density provision and that traffic generated from an approved development based on that density would probably require access through the streets in the adjoining subdivision which had been reserved by defendants for that very purpose.
In a proceeding challenging Wall's zoning amendment, defendants could have raised the very argument they advanced as justifying the landlocking of plaintiff's property; that the permitted density was incompatible with the adjoining residential subdivisions and, as such, was arbitrary, capricious and unreasonable. See Sartoga v. Borough of West Paterson, 346 N.J.Super. 569, 573-76, 788 A.2d 841 (App.Div.2002) (where adjoining City challenged zoning ordinance permitting high-density Mount Laurel development, which provided for extension of City's dead-end street to allow access to the development, claiming the zoning was in conflict with the policies of the MLUL). For whatever reason, defendants chose not to appeal, and thus were procedurally barred from challenging the ordinance. See R. 4:69-6(a). Essentially, we view the vacating of the streets by defendants as an attempt to avoid the procedural bar.[7] We therefore conclude that the adoption of the vacation ordinances constitute an invalid use of defendants' legislative power under N.J.S.A. 40:67-19.
*237 Brick also argues that plaintiff has no right to object to the ordinances, even if the property would be landlocked as a result of the vacation of the streets, because it is not an "abutting" landowner. For this proposition, Brick relies upon Good Deal of Ivy Hill, Inc. v. City of Newark, 32 N.J. 263, 160 A.2d 630 (1960), where the owner of commercial property in Maplewood, adjoining Newark, objected to Newark's erection of a barricade at the dead end of a street which terminated at the boundary of the two municipalities. Id. at 265, 160 A.2d 630. The Court held that a municipality has no duty to provide access to a road "for a citizen of the adjoining community whose land is just beyond the geographical limit." Id. at 267, 160 A.2d 630. The Court concluded that plaintiff, the owner of the land in Maplewood, was not an "abutting" owner entitled to access as a matter of right, in part because the owner would have no standing to challenge the vacation of the dead-end street "should Newark decide to do so." Id. at 268-69, 160 A.2d 630. In so finding, the Court found "pertinent" the fact that the dead-end street was "not necessary for purposes of ingress and egress to and from plaintiff's premises, ... even as a matter of convenience [,]" id. at 269, 160 A.2d 630, because plaintiff had access through streets in Maplewood. Id. at 266, 160 A.2d 630.
Significant to the matter before us, the Court in Good Deal made the following observation:
[I]t must be kept in mind that we are not dealing with a public street which connects at the boundary line of Newark with a street in Maplewood and so forms part of a traffic communication system between the two municipalities. In such a situation the right of the governing body of either to vacate or close off its street would be open to serious question. Cf. City of Gary v. Much, 180 Ind. 26, 101 N.E. 4 (Sup.Ct.1913); Messinger v. City of Cincinnati, supra [36 Ohio App. 337, 173 N.E. 260 (1930)]. Nor are we considering a case where Eastern Parkway [the dead-end street] constitutes a way of necessity into plaintiff's land....
[Id. at 269, 160 A.2d 630 (emphasis added).]
Accordingly, the Court cautioned that its holding extended no further than the case before it. Ibid. See also Brazer v. Borough of Mountainside, 55 N.J. 456, 469, 262 A.2d 857 (1970) (there is no "hard and fast rule" as to when a parcel abuts a public street; "the result in each case is reached upon a consideration of the particular circumstances involved, including among other things intention, the physical situation, the manner of its creation and the nature of the right asserted").
We do not hesitate to conclude that plaintiff is an "abutting" landowner for purposes of this litigation. Unlike the situation in Good Deal, involved here is a proposed street network in plaintiff's subdivision designed to interconnect with the three streets in question as part of a "traffic communication system." Ibid. The streets in all three subdivisions have fifty feet rights-of-way. As noted, the Howell subdivision plan shows Cherry Lane and Redbud Lane connecting to plaintiff's property with a notation "reserved for future road," and the Brick subdivision provides that the Maypink Lane cul-de-sac is to be "removed on extension of Maypink Lane" at the boundary of plaintiff's property. Consequently, it cannot be disputed that both defendant municipalities expected that the three streets involved would be extended into plaintiff's tract in the future. To hold that plaintiff is not an abutting property owner for the purpose of challenging the vacating ordinances would obviously *238 cause an impractical if not absurd result.
Finally, Brick Township argued before the trial court that a portion of the end of Maypink Lane, which connects with plaintiff's property, is nothing more than an unpaved "paper street," dedicated only for a "potential" right-of-way. Thus, it argued, its governing body had an unqualified right to vacate that portion of the street. That issue has not been raised or briefed before us, and thus is deemed waived. See Tynan v. Curzi, 332 N.J.Super. 267, 753 A.2d 187 (App.Div.2000); and see Pressler, Current N.J. Court Rules, comment on R. 2:6-2 (2002).
Affirmed.
NOTES
[1] Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 67 N.J. 151, 336 A.2d 713, appeal dismissed and cert. denied, 423 U.S. 808, 96 S.Ct. 18, 46 L.Ed.2d 28 (1975) (Mount Laurel I); Southern Burlington Cty. N.A.A.C.P. v. Township of Mount Laurel, 92 N.J. 158, 456 A.2d 390 (1983) (Mount LaurelII).
[2] In its complaint, plaintiff had also alleged inverse condemnation and violations of 42 U.S.C.A. § 1983, RICO, the Federal Fair Housing Act, and the Americans With Disabilities Act. After the matter was removed to the federal court, it was remanded to the Law Division after plaintiff agreed to dismiss these claims.
[3] Joseph Schistler, plaintiff's wetlands expert, testified before the Wall Planning Board that, in applying for an access permit with the Department of Environmental Protection, plaintiff must demonstrate that there are no other alternative means of access. He stated that it would "be almost impossible" to obtain such a permit in view of the availability of alternative means of access to the site through Howell and Brick.
[4] Other courts have held that an ordinance or resolution vacating a public street may be set aside if it leaves a property owner landlocked, although the focus has been more on the injury suffered by the property owner than on the need for regional cooperation. See McPhillips v. Brodbeck, 289 Ala. 148, 266 So.2d 592, 596 (1972) (vacating "dedicated streets is not lightly to be viewed when it deprives others, and especially abutting landowners, of their use"); Coe v. City of Albuquerque, 81 N.M. 361, 467 P.2d 27, 30 (N.M. 1970) (although "vacation of public streets is essentially a legislative function, the action must comply with constitutional guaranties that property cannot be taken without due process of law....").
[5] It is unclear what "burdens" Howell is referring to, at least on the record before us.
[6] In the Mount Laurel litigation, the appointed Master concluded that plaintiff's site was "suitable" for the construction of a high-density development.
[7] Defendants also did not appeal from the Wall Township Planning Board's approval of plaintiff's preliminary and final subdivision applications. During that proceeding, officials and professionals from both municipalities appeared in opposition to the application. The Board, after receiving testimony and a traffic study from plaintiff's expert, concluded that no traffic or safety problem would exist in the neighboring communities as a result of the development of plaintiff's site.