912 A.2d 749

MENK CORPORATION, PLAINTIFF, v. TOWNSHIP
COMMITTEE OF BARNEGAT, DEFENDANT.

Superior Court of New Jersey
Law Division Ocean County

Decided March 24, 2006.

264

*Guliet D. Hirsch,* for plaintiff (*Archer & Greiner,* attorneys).

*Jerry J. Dasti,* for defendant (*Dasti, Murphy, McGuckin, Ulaky, Cherkos & Connors,* attorneys).

SERPENTELLI, A.J.S.C.

This Action in Lieu of Prerogative Writs raises an issue of first impression arising out of the implementation of the *Mount Laurel* doctrine.[1] Menk Corporation (hereinafter "plaintiff", "applicant" or "Menk"), seeks to compel the Barnegat Township Committee (hereinafter "Township" or "defendant") to vacate three unimproved paper streets so that Menk may proceed with a 347–unit inclusionary development that will provide thirty-five affordable housing units.

Plaintiff appeared before the Barnegat Township Planning Board on June 24 and July 22, 2003, seeking preliminary site plan approval for its development. At the end of the July 22 hearing, the Board granted preliminary approval for the project, which was memorialized in a resolution dated August 23, 2003. The Planning

---

[1] *S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel,* 92 *N.J.* 158, 456 A.2d 390 (1983).

Board authorized final approval of section 1 of the development on July 22, sections 2 and 3 in September 2004 and section 4 in January 2005. All approvals were subject to the condition that the Township would vacate three paper streets located within plaintiff's property.

On two occasions after the subdivision approvals plaintiff asked that the Township vacate the unimproved paper roads. Menk's engineers sent the first request to Township on March 23, 2004, which was apparently in response to a letter from the Township Engineer indicating he had no objection to vacating the paper streets. Some time shortly after receiving that letter, a road vacation ordinance was drafted but never introduced. By letter to the Township's Mayor dated May 5, 2005, Menk again asked that the roads be vacated so that it could proceed with its development. The Township responded on May 16, 2005, that it would not vacate the streets. This action followed.

Menk contends that the paper streets within its subdivision are not needed for any public purpose. In addition, plaintiff asserts that the Township's refusal to vacate the streets impedes the creation of affordable housing because it would require complete re-engineering of the project to accommodate the present street layout thereby causing delay and significant cost generation and because the resulting street system would violate the Residential Site Improvement Standards of *N.J.A.C.* 5:21–1 (hereinafter R.S.I.S.). Finally, plaintiff asserts that it is under no obligation to respond to the Township's demand that it pay for the value of the property if the roads are vacated.

Defendant claims that the Township has an absolute right to decide whether it should vacate a street and the court simply cannot interfere with that exercise of discretion. Secondly, it argues that its refusal does not have *Mount Laurel* implications because Menk could redesign its subdivision so as to incorporate the present roads. Finally, as noted, it asserts that if the court orders the streets to be vacated, plaintiff should compensate the Township for the value of the vacated property.

At the outset, it should be acknowledged that most of the cases relating to street vacation disputes have arisen in the context of a challenge to the affirmative exercise of that power as opposed to a refusal to exercise it. However, there is no reason to believe that the principles applicable to challenges to approved road vacations would be any different than those instances in which a refusal to vacate a street is disputed.

The general rule is that the decision to vacate lies in the sound discretion of the governing body and that power is subject to limited review by the courts. *Con Realty Co. v. Ellenstein,* 125 *N.J.L.* 196, 14 *A.*2d 544 (Sup.Ct.1940). Vacation of public streets is essentially a legislative function. Therefore, it is a plenary power which is only subject to judicial review based on constitutional claims, those instances tainted with fraud or palpably not in the service of a public interest, or when there is a clear perversion of the power itself. *Pyatt v. Dunellen,* 9 *N.J.* 548, 553–54, 89 *A.*2d 1 (1952); *Howell Props. Inc. v. Twp. of Brick,* 347 *N.J.Super.* 573, 580–81, 791 *A.*2d 228 (App.Div.2002); *Con Realty Co., supra,* 125 *N.J.L.* at 198–99, 14 *A.*2d 544.

As to the public interest requirement, the court in *Howell Properties* said:

> Plainly, the controlling criterion under the statute is whether the vacation of a street will serve the "public interest"... Our function is confined to a determination whether factors other than the public interest and welfare have influenced the governing body's legislative action. While the vacation ordinances, in another setting, might be valid exercise of municipal power, "they must be viewed in the light of the present factual context, in order to ascertain the quality of those acts."
> [*Howell Props., supra,* 347 *N.J.Super.* at 580–81, 791 *A.*2d 228 (citations omitted).]

As noted, plaintiff's principal justification for its request is that it has an approved affordable housing site that will provide thirty-five affordable units within its development. It has been through the subdivision process and obtained final approval for the project. Defendant asserts that plaintiff could start the approval process over again and incorporate the paper streets in a revised subdivision application. Menk responds that altering its plan would involve delay, substantial cost generation and could well result in a

street layout which would not conform to the R.S.I.S. The Township does not argue with those assertions and it has waived a plenary hearing which would have given it the opportunity to challenge the plaintiff's position. In fact, it appears that the Township impliedly acknowledges the common sense of the plaintiff's arguments, namely, that a reapplication would involve delay, significant cost and a potential that the applicant could not comply with R.S.I.S.

Thus, the central issue becomes whether the court should interfere with the Township's discretion based upon the plaintiff's contention that the court needs to do so in order to vindicate the *Mount Laurel* doctrine.

■ As the Supreme Court said in *Mount Laurel I:*

It is plain beyond dispute that proper provision for adequate housing of all categories of people is certainly an absolute essential in promotion of the general welfare required in all local land use regulation... It has to follow that, broadly speaking, the presumptive obligation arises for each such municipality affirmatively to plan and provide, by its land use regulations, the reasonable opportunity for an appropriate variety and choice of housing, including, of course, low and moderate cost housing, to meet the needs, desires and resources of all categories of people who may desire to live within its boundaries. *Negatively, it may not adopt regulations or policies which thwart or preclude that opportunity.*

[*S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel,* 67 *N.J.* 151, 179–80, 336 *A.2d* 713 (1975) (emphasis supplied)]; *See also S. Burlington County N.A.A.C.P. v. Twp. of Mount Laurel, supra,* 92 *N.J.* at 260–62, 456 *A.2d* 390.

In *Howell Props., supra,* 347 *N.J.Super.* at 575, 791 *A.2d* 228, two townships adopted ordinances vacating portions of public streets which abutted the plaintiff's property. Plaintiff sued seeking to invalidate the vacation ordinances. *Id.* at 576, 791 *A.2d* 228. The Appellate Division found that the adoption of the legislation constituted an unlawful exercise of the townships' powers because the road vacations did not serve the public interest under the vacation statute, *N.J.S.A.* 40:67–19. 347 *N.J.Super.* at 587, 791 *A.2d* 228. In so doing, the Appellate Division found that the vacation ordinances essentially precluded development of housing which would serve a regional and statewide interest by

generating trust funds for the construction of affordable housing. *Ibid.* The court said:

> We are convinced that, in deciding what is in 'the public interest,' courts should not confine themselves exclusively to the parochial interests of the municipality invoking its power to vacate. Opinions in the land-use context have emphasized the obligation of a municipality to consider the welfare of the region when the governing body exercises its legislative authority. "The insularity and parochialism of the Chinese wall theory of municipal zoning has long since been discredited." The MLUL itself recognizes this principle, by providing that one purpose of zoning is "to ensure the development of individual municipalities does not conflict with the development and general welfare of neighboring municipalities...." Because zoning powers are derived from the State's general authority, a zoning decision "must consider the welfare of all of the State's citizens, not just the interest of the inhabitants in a particular locality."
> [*Id.* at 581, 791 *A.2d* 228 (citations omitted).]

The court went on to find that the fact that the subject property was a component of Wall Township's *Mount Laurel* obligation was significant and that the defendants' vacation ordinances essentially trumped the Township's reasonable efforts to satisfy its *Mount Laurel* responsibility by precluding development on a site deemed suitable for the plaintiff's proposal. *Id.* at 584–85, 791 *A.2d* 228.

What the *Howell Props.* court said about the affirmative efforts of the defendant townships to impede affordable housing construction by vacating needed streets applies equally to Barnegat Township's negative response to the request to vacate the streets which thereby prevent Menk's project from going forward expeditiously. The court specifically invited the Township to demonstrate any public interest in maintaining the paper streets. It conceded that there was none other than its intractable claim that the court cannot tell it what to do.

In fact, it is evident that defendant's refusal to act affirmatively to vacate the streets in this factual context has constitutional implications when viewed within the framework of the *Mount Laurel* doctrine. It is not necessary to demonstrate that defendant is willfully delaying plaintiff's project or that it is affirmatively placing obstacles in the path of the opportunity to produce affordable housing, although that scenario is not unknown to our courts. However, the fact is that there is simply no sustainable

public interest in maintaining the three unused and unneeded streets. To the contrary, there is a strong public interest in eliminating them so as to promote the construction of affordable housing quickly and without delay or unnecessary cost generation.

■ As noted, defendant claims in the alternative that, if it is forced to vacate the paper streets, it should be entitled to be compensated for their value. The argument is simply without merit. The Township has cited several cases in which a municipality vacated roads which were contained within property it owned and sold to a third party. *Ferreira v. City of Asbury Park*, 237 *N.J.Super.* 142, 567 *A.2d* 233 (App.Div.1989); *Englander v. Twp. of W. Orange*, 224 *N.J.Super.* 182, 539 *A.2d* 1271 (App.Div. 1988); *Brighton Constr., Inc. v. L & J Enters., Inc.*, 121 *N.J.Super.* 152, 296 *A.2d* 335 (Chan.Div.1972). Of course, in that setting it was compensated because it owned all the property which incidentally included paper streets. However, the Township has not provided nor can the court find, a single case in which a municipality has received compensation for vacating a paper street located in property the municipality did not own at the time of the road vacation.

■ In fact, it is well established that generally a municipality has no ownership in the bed of streets. Instead, the presumption is that title to one half of the road bed lies in the abutting property owner subject to whatever public right of way or easement may exist. *Hous. Auth. of City of Newark v. Norfolk Realty Co.*, 71 *N.J.* 314, 322 n. 1, 364 *A.2d* 1052 (1976); *Wolff v. Veterans of Foreign Wars*, 5 *N.J.* 143, 147, 74 *A.2d* 253 (1950); *Stockhold v. Jackson Twp.*, 136 *N.J.L.* 264, 266, 55 *A.2d* 241 (1947). Since Menk owns the property on both sides of the paper streets, there is no basis for the Township to claim compensation. McQuillin, in *Municipal Corporations*, summarizes the law as follows:

A municipality is not entitled to compensation for loss of a public easement in streets in which it does not own the fee. It thus follows, where a street is vacated on the application of abutting landowners, the municipality has no such proprietary interest therein to entitle it to compensation.

[McQuillin, 11 *Municipal Corporations* § 30.189 at 139 (3d ed. 1991).]

Therefore, since defendant has conceded that there remains no public interest in retaining the paper streets within Menk's property and given the need to vacate those streets to allow development and the concomitant production of affordable housing, the court directs the Township to adopt a road vacation ordinance pursuant to *N.J.S.A.* 40:67–19 within sixty days of the date of this opinion surrendering all public interest in the paper streets within plaintiff's property.